Clifford N. ABBOTT

v.

MOORE BUSINESS FORMS, INC., Thomas A. Powell, John L. Wilson, L. Dale Foster, and Robert H. Downie.

Civ. A. No. 76–82.

United States District Court, D. New Hampshire.

Oct. 28, 1977.

Eleanor Krasnow, Manchester, N.H., for plaintiff.

L. Jonathan Ross, Wiggin & Nourie, Manchester, N.H., for defendants.

## MEMORANDUM OPINION

BOWNES, District Judge.

Plaintiff has brought an action alleging age discrimination by defendant under 29 U.S.C. § 621 *et seq.*, Age Discrimination in Employment Act (ADEA), and has sought further relief pursuant to 42 U.S.C. §§ 1985 and 1988, alleging that defendants conspired to deprive plaintiff of his civil rights. He has also sought to certify his claim as a class action; this question is not at issue at present. Defendants have moved to dismiss on the grounds that (1) this court lacks subject matter jurisdiction because of plaintiff's alleged failure to comply with the time filing requirements of 29 U.S.C. § 626(d) and (2) for failure to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1985(3).

The facts are not in dispute.

Plaintiff was discharged on January 31, 1974, by Moore Business Forms; he was then forty-three years of age. In February, 1974, plaintiff lodged age and national origin discrimination charges against defendant with the Department of Labor, the Equal Employment Opportunity Commission, and the New Hampshire Commission on Human Rights. He filed a formal complaint with the Department of Labor on the age discrimination charge on March 5, 1974.

Following an investigation by the Department, in which a meeting with defendant took place, the Department informed plaintiff and defendant on April 3, 1974, that it had found no basis for the charge. Plaintiff was not specifically informed of the requirement to file a timely intent to sue letter with the Secretary of the Department of Labor should he pursue an independent suit. *Cf.* 29 U.S.C. § 626(d).

In October, 1975, following the completion of the EEOC procedures relating to his national origin discrimination charge (and a subsequent retaliation claim), plaintiff was referred to counsel who thereupon informed him of the necessity of filing an intent to sue letter on the age discrimination charge. This was done on November 20, 1975. On January 29, 1976, a formal conciliation was held at the Department of Labor, at which time the parties were unable to conciliate their differences. The instant suit was filed March 15, 1976.

## THE JURISDICTIONAL QUESTION
## UNDER 29 U.S.C. § 626(d)

■ I. I ruled in *Skoglund v. Singer Company*, 403 F.Supp. 797, 804 (D.N.H. 1975), that Section 626(d) was not "jurisdictional," in the sense that failure to meet the requirement necessarily deprived the court of jurisdiction to hear the case. Relying on the congressional intent which propelled the age discrimination act, on the language in the statute itself, and on the legislative history, I held that it was akin to a statute of limitations and thus subject to equitable tolling considerations.

It is not clear from the statutory language whether the timely filing requirement is jurisdictional or not. In cases of ambiguity, construction of the statute should favor the broad humanitarian goals of the legislation.

> A procedural requirement of the Act, of doubtful meaning in a given case, should not be interpreted to deny an employee a claim for relief unless to do so would clearly further some substantial goal of the Act. *Moses v. Falstaff Brewing Corporation*, 525 F.2d 92, 94 (8th Cir. 1975).

Since *Skoglund*, several other courts have examined this issue with a resulting split of authority; some courts hold the requirement to be jurisdictional and others hold it to be subject to equitable modifications. *Clark v. West Chemical Products, Inc.*, 557 F.2d 1155 (5th Cir. 1977); *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976) and cases cited at 1259, n. 2, *cert. granted*, 429 U.S. 1089, 97 S.Ct. 1097, 51 L.Ed.2d 534 (1977); *Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1312 (5th Cir. 1976); *Moses v. Falstaff Brewing Corp., supra; Nickel v. Shatterproof Glass Corp.*, 424 F.Supp. 884 (E.D. Mich.1976); *Davis v. RJR Foods, Inc.*, 420 F.Supp. 930 (S.D.N.Y.1976); *Sutherland v. SKF Industries, Inc.*, 419 F.Supp. 610 (E.D. Pa.1976).

There continues to be a misapprehension as to the precise use of the term "jurisdictional" in this framework. The early court decisions holding the requirement to be jurisdictional nonetheless discussed the specific facts in the case, intimating that the equities did not favor waiver. If the requirement were truly jurisdictional, such as the $10,000 amount in controversy requirement, equitable factors would have no relevance. Later decisions have frequently either cited the early holdings that the requirement is jurisdictional or have analyzed the facts and determined that the party had not established a *sufficiently compelling excuse* to warrant relief from the deadline requirement.

The First Circuit has not directly addressed this issue. However, in a recent case, *Hadfield v. Mitre Corp. et al.*, 562 F.2d 84 (1st Cir. 1977), the court commented on the time requirements of Section 633(b) of Title 29, which concern the sixty day waiting period after proceedings have been initiated with the state administrative agency before suit can be brought under the ADEA. While not ruling directly on the question here, the court suggested that equitable tolling is permissible for Section 633(b). *Ibid.* at 87–88. This is an indication that, in this Circuit, observance of the time limit is not strictly jurisdictional.

The court cited with approval three cases which refused to find statutory filing periods to be jurisdictional barriers to suit. In *Love v. Pullman*, 404 U.S. 522, 525–526, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Supreme Court cautioned against an overly technical insistence on filing requirements when dealing with lay people who seek redress under a remedial statute, Title VII. *Reeb v. Economic Opportunity Atlanta, Inc.*, 5 Cir., 516 F.2d 924, 928–931 (1975), held the timing requirements for Title VII not to be jurisdictional, but analogous to a statute of limitations subject to equitable modifications such as tolling. The court in *Goger v. H. K. Porter Company, Inc.*, 3 Cir., 492 F.2d 13, 16–17 (1974), found that the failure to file a timely complaint under Section 633(b), while more than a "mere 'technical' omission," was subject to equitable relief when circumstances so demanded.

Extrapolating from the First Circuit's approving reference to the above cases, and its adverting to the possibility of the district court's finding equitable reasons to toll the requirements for Section 633(b), I find it a reasonable assumption that a similar view of Section 626(d) will be taken.

I, therefore, reiterate my holding in *Skoglund* that the filing deadline is not strictly jurisdictional but is a condition precedent, analogous to a statute of limitations which may be tolled when the equities so demand.

II. The Supreme Court first recognized the general applicability of equitable tolling factors to statutes of limitations in *Bailey v. Glover*, 21 Wall. 342, 349, 88 U.S. 342, 349, 22 L.Ed. 636 (1874). *See Gardner v. Panama R. Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31 (1951); *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

█ Factors suggesting the appropriateness of tolling and which must be weighed in this case include: lack of actual notice of the filing requirement, *Powell v. Southwestern Bell Telephone Company*, 494 F.2d 485, 487 (5th Cir. 1974); lack of constructive knowledge, *e. g.*, as where one has secured an attorney, who is thereby charged with presumptive knowledge of the law's re-

quirements, *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1197 (5th Cir. 1975); diligence in pursuing one's rights, *Dartt v. Shell Oil Co., supra*; absence of prejudice to defendant, *Love v. Pullman Co., supra*, 404 U.S. at 526, 92 S.Ct. 616 (1972); plaintiff's reasonableness in remaining ignorant of the notice requirement, *cf. Melendez v. Singer-Friden Corp.*, 529 F.2d 321, 324–325 (10th Cir. 1976).

█ Reading the complaint in the light most favorable to plaintiff, as I must do in a motion to dismiss, I find that plaintiff had neither actual knowledge nor constructive notice of the notice of intent filing requirement until he contacted his present attorneys in October, 1975. Defendant has questioned whether plaintiff received a certain publication from the Department of Labor in April, 1974, which included the filing information. Plaintiff stated under oath at the hearing before this court that he had no recollection of receiving the disputed pamphlet. I must take the facts in the light most favorable to plaintiff in ruling on defendant's motion to dismiss. For purposes of this motion, therefore, plaintiff is not charged with actual or constructive knowledge of the filing requirement until he retained present counsel in October, 1975. Within thirty days thereafter, on November 20, 1975, plaintiff's counsel filed a notice of intent to sue letter with the Department of Labor.

Turning to the question of plaintiff's diligence in seeking to vindicate his rights, the record indicates that he actively pursued the remedies made known to him. After his discharge from Moore Business Forms on January 31, 1974, he made personal visits to the Department of Labor to file an age discrimination charge on February 5, 1974, to the EEOC to file a national origin discrimination charge on February 6, 1974, and to the New Hampshire Commission on Human Rights to file the age discrimination charge on February 8, 1974. Thereafter, plaintiff remained in close contact with the compliance officer at the Department of Labor and sent all information requested from him to the Department of Labor. On

March 11, 1974, plaintiff completed the "Employment Information Form" sent by the Department of .Labor which detailed the alleged discriminatory discharge. Thereafter, plaintiff received, on April 3, 1974, a letter from the Department of Labor saying that it had been unable to substantiate his claim of discriminatory discharge. I will deal with the April 3 letter in more depth subsequently since it bears on the reasonableness of plaintiff's lack of knowledge of the filing requirement. During the latter part of 1974, plaintiff remained in contact with the EEOC to pursue the national origin discrimination charge (which is the subject of a separate suit). In September, 1975, plaintiff met in conference with the EEOC. On October 10, 1975, the EEOC informed plaintiff that he had a private right to sue notwithstanding the EEOC's finding of no cause. The EEOC referred plaintiff to his present attorneys on October 31, 1975. From March, 1974, through September, 1974, plaintiff had a series of meetings with the New Hampshire Council on Human Rights to pursue his age discrimination charge. From this history emerges a picture of a plaintiff who pursued the vindication of his rights with diligence.

The next issue to be examined in the determination of whether the instant case is one which merits the invocation of equitable tolling is possible prejudice to the defendant. Defendant has submitted to this court that by failing to file the requisite notice of intent to sue within the statutory time limits, it has been prejudiced in two ways: first, it has been denied the opportunity to conciliate; and second, it has been denied "important opportunities" to prepare its defense to plaintiff's suit. Defendant's Memorandum at 3–4.

I find that defendant has not been prejudiced by plaintiff's late filing for two reasons.

1. The process which the notice of intent to sue letter is intended to trigger did, in fact, occur as a result of plaintiff's complaint of March 5, 1974. The Department of Labor investigated the complaint, conferred with the parties, and found no grounds for the allegation. The purpose behind the 180 (or 300) day notice was discussed in *Powell v. Southwestern Bell Telephone Company, supra,* at 488.

> [It] was intended to insure that potential defendants would become aware of their status and the possibility of litigation reasonably soon after the alleged discrimination . . .. In turn this would promote the good faith negotiation of employers during the 60 day conciliation period and provide an opportunity for preservation of evidence and records for use at a trial necessitated by failure of negotiation.

Defendant in this case was notified of its status and the possibility of litigation within one month of the allegedly discriminatory discharge. The investigation by the Department of Labor made it known to defendant that a complaint had been lodged; defendant was visited by the Department in March, 1974, to review plaintiff's discharge. Furthermore, defendant acknowledged the possibility of suit in a letter dated July 17, 1974, Exhibit I, Plaintiff's Supplemental Memorandum.

2. When given the formal opportunity to conciliate in January, 1976, the attempt was unsuccessful. There is no reason to assume it would have been more successful earlier, particularly in light of defendant's own statement that the economic situation at Moore had deteriorated shortly after plaintiff's dismissal and in view of the fact that the Department of Labor's finding tended to support defendant's position.[1]

---

1. *See Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv.L.Rev. 1109, 1200 (1971), for a discussion of the failure of the conciliation process in Title VII cases to successfully settle cases. There is no similar statistical breakdown available from the Department of Labor concerning the number of successful conciliation efforts under the ADEA; similarities between Title VII and the ADEA suggest comparable results, especially in view of the absence of enforcement power such as that possessed by either the NLRB or state fair employment practices commissions with cease and desist powers.

Defendant's second claim of prejudice is premised on its being denied the opportunity to prepare its defense for this suit. Specifically, defendant asserts that the death of the Department of Labor compliance officer who originally investigated the complaint during March and April, 1974, has deprived it of the opportunity to discover important information. I note two points: first, the records made by the compliance officer are readily discoverable; and second, the officer in question, one Mr. Moreau, died on October 24, 1976, nearly one year after defendant, in fact, had received the formal notice of plaintiff's intent to sue and seven months after suit had been filed in this court. I fail to see any prejudice in this instance. Defendant could easily have deposed the officer prior to his death.

The final issue is the reasonableness of plaintiff's ignorance of the timely filing requirement. In examining this question, it must be borne in mind that the Age Discrimination in Employment Act is remedial legislation which should be liberally interpreted to effectuate its purpose. Insistence on procedural technicalities, especially where, as in this case, they have not been highlighted or made known to the aggrieved, does not serve the humanitarian goals the statute was enacted to secure.

Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process. *Love v. Pullman, supra*, 404 U.S. at 527, 92 S.Ct. at 619.

A. The April 3, 1974, letter which the Department of Labor sent to plaintiff made no mention whatsoever of the requirement that plaintiff file a notice of intent to sue letter within the statutory period should he desire to seek private redress. In fact, the only time limit which is mentioned is the two year statute of limitations period for filing private actions. It can be argued that, by mentioning one time period, the Department of Labor inadvertently encouraged the mistaken belief that it was the only time limit which pertained to the plaintiff.

The letter, in pertinent part, reads as follows:

The fact that [the Department of Labor] will take no further action on your behalf does not affect your private right under the Act to bring an independent suit to recover any back wages due. The Department of Labor does not encourage or discourage such suits. The decision is entirely up to you. However, keep in mind that recovery of back wages under this law is subject to a statute of limitations. Generally, this means that any part of a back wage claim which was earned more than two years before suit is filed may not be collectible.

The Department of Labor has since stopped using the form letter it sent to plaintiff and has replaced it with a form letter which (a) makes no mention of any time limit, (b) specifically refers the reader to the pamphlet to learn of the pertinent time limits, and (c) informs the recipient that the complaint she/he has lodged is not a notice of intent to sue, thereby flagging one's attention to the requirement to file such notice. An example of the form letters now used reads:

The Department of Labor can take no further action with respect to this matter. This does not affect your individual rights, as explained in the enclosed pamphlet. As you will note, there are certain requirements with specific time periods governing the circumstances under which an individual can file his own suit under this Act. The fact that you submitted information concerning an alleged unlawful practice has not been considered a notice to the Secretary of Labor of intent to file suit. We do not, of course, encourage or discourage such suits. The decision is entirely up to you.

The letter now used by the Department of Labor does not set a trap for the unwary which the letter sent to plaintiff did; it puts the recipient on notice in a manner which the earlier letter failed to do.

B. The April 3, 1974, Department of Labor letter further misleads the plaintiff in speaking of the right to bring suit to recover back wages. To a layman's way of thinking, this logically would mean that he could bring suit only if he were owed back wages, and the plaintiff, in this instance, was not. He did not realize that he could sue for back wages for the time during which he was wrongfully discharged should he, in fact, be able to prove his charge. This language in the letter, when combined with the comment that the Department of Labor could take no further action on behalf of the plaintiff, could reasonably mislead the unwary layman into thinking that *no* further action need or, in fact, *could* be taken by the Department of Labor. After reading the April 3, 1974, letter, it cannot be said that a reasonably prudent layman would realize the necessity of filing a notice of intent to bring suit with the Secretary of Labor.

C. Plaintiff's counsel argued strongly that the Department of Labor, as the statutory trustee of plaintiff's rights under the ADEA, had not adequately discharged that duty with regard to the plaintiff, and that such failure on the part of the statutory trustee should not inure to the detriment of the plaintiff. While I do not pass on this interpretation of the statute, I do note that the Department of Labor's communication with plaintiff was such as might mislead a layman into the course of action taken by plaintiff with the consequent failure to file the notice within the statutory period.

Second, plaintiff did not elect his remedies or in any fashion make a knowing waiver of his right to sue. His failure to file the notice of intent within the statutory period was not based on any strategic design or attempt to pursue any tactical advantage. The recent Supreme Court case cited by defendant is, therefore, not apposite. *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 236–240, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (cited by defendant as *Guy v. Robbin & Myers, Inc. et al.*), held equitable tolling to be inappropriate where plaintiffs had consciously chosen to pursue the remedy of arbitration prior to filing a claim with the EEOC. Plaintiffs then sought equitable tolling of the timing requirement when the arbitration proved unsuccessful. *Robbins & Myers* reaffirmed the policy enunciated in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 54, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), that independent statutory remedies are equally available to the plaintiff and his election *vel non* of one does not impinge on his ability to pursue the other. Plaintiff, in the instant case, is not in the same position: his claim for equitable tolling is that he did not *know* of the time limit and that the Department of Labor led him to believe that there were no time limits other than the two year statute of limitations.

For the above stated reasons, I, therefore, deny defendant's motion to dismiss the ADEA claim.

## THE 42 U.S.C. § 1985 QUESTION

█ Plaintiff alleges that defendant's agents conspired to deprive plaintiff of the equal protection of the laws in violation of 42 U.S.C. §§ 1985 and 1988. In *Griffin v. Breckenridge*, 403 U.S. 88, 101, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held Section 1985(3) to reach private as well as governmental conspiracies. It specifically reserved the question whether Section 1985(3) gave rise to a cause of action when the alleged discrimination arose from other than a racial bias. *Id.* at 102, n. 9, 91 S.Ct. 1790. The Court warned against the attempt to transform the statute into an all-embracing federal tort law.

> The constitutional shoals that would lie in the path of interpreting section 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. *Id.* at 102, 91 S.Ct. at 1798.

Other courts have interpreted this limiting language to require one of three elements to be present:

The breadth of the statute's coverage is yet to be determined, but three categories of protected rights have been plainly identified. *Griffin* gives express recognition to a black citizen's Thirteenth Amendment rights and to his federal right to travel interstate; the title of the statute expressly identifies the third category, namely, rights protected by the Fourteenth Amendment. We think the section 1983 cases make it clear that in this third category a "state involvement" requirement must survive *Griffin. Dombrowski v. Dowling,* 459 F.2d 190, 195 (7th Cir. 1972) (footnotes omitted).

The instant complaint does not involve an allegation of racial discrimination, nor an interference with the right to travel interstate. To invoke the third category, *i. e.,* rights protected under the Fourteenth Amendment, there must be an allegation of state action which is absent here. Judge, now Justice, Stevens found that an allegation of discrimination based on sex would not be sufficient. *Cohen v. Illinois Institute of Technology,* 524 F.2d 818, 828 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *Murphy v. Mount Carmel High School,* 543 F.2d 1189, 1192–1193 (7th Cir. 1976). The Supreme Court's recent constricted reading of Section 1981, *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), coupled with its cautionary stance on expanding the Civil Rights Acts to encompass general tort law, convince me that alleged discrimination based on age likewise fails to come within the proscription of Section 1985.

I, therefore, grant defendant's motion to dismiss as to Count II, the claim based on 42 U.S.C. §§ 1985 and 1988.

SO ORDERED.