Carl ROSE, Petitioner,

v.

Elizabeth DOLE, Secretary of Labor, Respondent.

No. 90–3651.

United States Court of Appeals, Sixth Circuit.

Argued March 28, 1991.

Decided May 28, 1991.

---

Anthony B. Lee (briefed), Johnson City, Tenn., Robert G. Leger (argued), Jonesborough, Tenn., for petitioner.

William J. Stone, Barbara E. Racine (argued and briefed), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., Elizabeth H. Dole, Secretary of Labor, U.S. Dept. of Labor, Washington, D.C., for respondent.

Before JONES and SUHRHEINRICH, Circuit Judges, and FEIKENS, Senior District Judge.[*]

PER CURIAM.

Petitioner Carl Rose appeals the final decision of the respondent Secretary of Labor denying his request to toll the time for filing his complaint for unlawful termination under the Energy Reorganization Act ("ERA"). For the reasons set forth below, we affirm.

## I.

This proceeding began on December 31, 1981, when Rose filed an administrative complaint with the Department of Labor ("DOL") under Section 210 of the ERA and its implementing regulations. 42 U.S.C. § 5851 (1988); 29 C.F.R. Part 24. Rose's complaint alleged that he had been wrongfully discharged, in violation of Section 210, when his former employer, Nuclear Fuel Services, Inc. ("NFS"), fired him in retaliation for providing information of a safety violation to the Nuclear Regulatory Commission ("NRC") during an investigation of NFS. Section 210 prohibits discrimination against an employee who engages in a protected activity and charges the DOL with investigating and resolving any complaints of discrimination.

Rose had been employed as a foreman at NFS since October of 1980. In October of 1981, NFS's equipment malfunctioned and a small quantity of radioactive material escaped. The incident was reported to the NRC by NFS, and during the subsequent investigation, Rose informed the NRC in-

[*] The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

vestigator that an alarm did not sound at the time of the incident because it had been improperly installed.[1] The NRC ultimately imposed a monetary penalty on NFS as a result of the information Rose provided. Rose was fired the day after NFS received notice of the penalty.

Rose was discharged on November 5, 1981, and his complaint was filed on December 31, 1981. Section 210(b)(1) of the ERA allows complainants to file a complaint with the Secretary of Labor ("Secretary") within thirty days of the discriminatory incident. 42 U.S.C. § 5851(b)(1) (1988). Thus, Rose's complaint was filed twenty-six days late. However, he included a request for an equitable tolling of the limitations period because he alleged that he had not become aware of his rights until he consulted an attorney on December 29, 1981.

On September 2, 1982, William Otter, former Administrator of DOL's Wage and Hour Division, responded to Rose's complaint by letter stating that the complaint was not timely filed and that Rose did not allege any valid reason for tolling the limitations period. Thus, the DOL refused to investigate Rose's complaint.

Rose petitioned this court for review. In *Rose v. Secretary of the Dept. of Labor*, 800 F.2d 563, 565 (6th Cir.1986), this court remanded the case to the Secretary because the Secretary had failed to inform Rose in its decision that he was entitled to further administrative appeals of his adverse decision. On remand, Paula V. Smith, then Administrator for Wage and Hour, informed Rose that she intended to abide by the Administrator's earlier determination not to investigate Rose's complaint. Rose followed this determination with a timely request for a hearing.

A hearing was held on July 14, 1987. Rose testified on his own behalf and argued that the thirty-day limitations period is not mandatory under the statute, and that it should be equitably tolled because he filed his complaint in the wrong forum.[2] Post-hearing briefs were also filed by both sides. In his brief, Rose reiterated his prior claims and also argued that he was entitled to equitable tolling of the statute of limitations because he had not become aware of his rights until he had consulted an attorney.

On January 25, 1988, the ALJ issued a summary decision again dismissing the complaint as untimely filed. In his determination, the ALJ weighed Rose's testimony regarding why he had waited until December 29, 1981, to consult an attorney. In this regard, the ALJ noted that Rose had testified that he wanted to see what became of his unemployment application, and that he went on a one-week vacation to visit his son over the holidays. The ALJ concluded that these excuses were not a proper basis for equitable tolling because Rose presented no evidence that he intended his unemployment application to be a complaint against his dismissal under the ERA. Further, the ALJ noted that Rose did not contend that his employer had actively misled him as to his cause of action or prevented him from asserting his rights.

Upon receiving the ALJ's decision, the Secretary issued a briefing schedule and allowed the parties to make further argument on the timeliness issue. On June 29, 1990, the Secretary adopted the ALJ's find-

---

1. It also appears that Rose told the NRC inspector, John Puckett, that he had informed the Materials Control Superintendent, as required by internal plant procedures, that he suspected a release of radioactive material. However, Puckett testified that the Materials Control Superintendent said that Rose did not make the required report. Being unable to resolve who was telling the truth, Puckett did not issue a legal citation against NFS for the incident. NFS claims that it fired Rose because its own internal investigation demonstrated that he had failed to file the report of a nuclear release as required by the regulations, and that he had lied to the NRC investigator in claiming that he had made the necessary report. Though this case deals exclusively with procedural issues, and does not go to the merits of the underlying claim, this information is included to provide a more complete picture of the underlying dispute between the parties.

2. Rose applied for unemployment benefits on November 23, 1981. At the hearing, Rose argued that his unemployment application would have put NFS on notice that he was contesting his dismissal.

ings on timeliness and equitable tolling, noting that the ALJ's decision was consistent with *School Dist. of the City of Allentown v. Marshall,* 657 F.2d 16 (3rd Cir. 1981) (which reversed the Secretary for allowing equitable tolling of the thirty-day limit under the Toxic Substances Control Act), and the Secretary's own precedent. This timely appeal followed.

## II.

The standard of review for cases under the Energy Reorganization Act of 1974, 42 U.S.C. § 5851, "shall conform to Chapter 7 of Title 5" of the United States Code. 5 U.S.C. § 706 allows the reviewing court to decide all relevant questions of law. This case involves the application of the doctrine of equitable tolling and is a question of law. Therefore, the appropriate standard of review in this case is *de novo. See NLRB v. Fullerton Transfer and Storage Ltd.* 910 F.2d 331, 343 (6th Cir.1990) (Engel, J., concurring) (ALJ's finding as to a question of law beyond his or her expertise in a particular regulatory scheme is not entitled special deference on appeal).

■ Rose first argues that he did not have notice of his rights and the thirty-day limitations period because NFS failed to follow the posting requirements under 10 C.F.R. § 19.1 *et seq.* (1989). 10 C.F.R. § 19.11(a) requires that each licensee, in this case NFS, post a copy of NRC Form 3 as well as copies of 10 C.F.R. § 19.1 *et seq.* The Secretary asserts that we should not consider this argument because it was not raised below. However, it appears the ALJ did hear testimony on the requirement of posting notice, and whether the required documents were in fact posted. Thus, even though this argument was not forcefully raised below, we think it was sufficiently raised to preserve it for review.

Nevertheless, we find Rose's argument to be without merit. With this argument, Rose seeks to imply that he was not informed of his rights to sue or to the thirty-day limitations period due to some dereliction on the part of his employer NFS. This contention is misleading for two reasons. First, as Rose vehemently points out, 10 C.F.R. § 19.1 *et seq.* and the version of NRC Form 3 (1–80) which were in force at the time of Rose's dismissal, did not make any reference to an employee's rights against discrimination for engaging in protected activity, nor do they make any reference to the thirty-day limitations period. Thus, even if the Form 3 and the regulations had been properly posted, Rose would not have been informed about his rights, and any alleged error in posting could not have prejudiced Rose in relation to this action.

Second, the testimony of NRC Inspector Puckett suggests that NRC fulfilled all of its posting requirement under the regulations. During the July 14 hearing before the ALJ, the following exchange took place between Inspector Puckett and counsel for NFS:

Q. Did you inspect the plant at Nuclear Fuel Services to determine whether or not 10 C.F.R. Part 19 was posted at the plant?

A. I have done so and yes, it was.

Q. Was it posted during the year 1981 to your knowledge?

A. I can answer that best by saying that it was a routine as part of my responsibilities as a Radiation Specialist to assure that that posting was there. I know that a violation was not issued because of its not being posted.

J.App. at 140. Rose did not offer any evidence to rebut this testimony. Thus, it would appear that NFS in all likelihood complied with the posting requirements under the regulations.[3] Thus, while Rose

---

3. In 1982, Part 19 and NRC Form 3 were amended to add information about an employee's right to protection against certain forms of discrimination and telephone numbers for employees to call in order to contact the DOL. Rose would have us interpret the addition of a notice requirement in the 1982 amendments as an "implicit admission" that the prior notice

requirement under the regulations was inadequate. However, it must be pointed out that prior to the amendment of the regulations, there was *no notice requirement.* Thus, Rose's attempt to indict NFS's behavior by asserting the company's failure to comply with a non-existent notice requirement cannot succeed. Further, the fact that the regulations now provide for

may have remained ignorant of his rights until after the expiration of the limitations period, it was not due to any alleged failure on the part of NFS to comply with the relevant regulations.

■ Rose also contends that he was affirmatively misled by his employer into believing that he did not have any rights not to be terminated because he was an employee-at-will. Once again the Secretary asserts that this argument cannot be raised now because it was waived below. We agree. In the ALJ's decision, he explicitly states: "[T]he Complainant does not contend that he was actively mislead [sic] by the Respondent [NFS] as to his cause of action or that Respondent prevented him from asserting his rights in some way." J.App. at 3. In addition, though the Secretary provided the parties with an additional opportunity to brief the timeliness issue after the ALJ's decision, Rose chose not to include his allegation of misconduct on the part of NFS. Further, in his briefs before this court, Rose does not present any evidence, other than pure allegation, that NFS acted in any way to obstruct or dissuade him from pursuing his complaint with the DOL. Thus, we will not consider this argument by Rose, as it was not raised below.

In another portion of his brief, Rose changes his tack somewhat and suggests that despite no misconduct on the part of his employer, he should be entitled to equitable tolling in this case under this court's decision in *Wright v. State of Tenn.*, 628 F.2d 949 (6th Cir.1980) (en banc) (adopting the factors articulated by Judge Bownes in *Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. 643 (D.N.H.1977) for the Circuit). In *Wright*, referring to *Abbott*, this court suggested five factors to be considered in determining whether equitable tolling is appropriate in a given case. Those factors are: (1) whether the plaintiff lacked actual notice of the filing requirements; (2) whether the plaintiff lacked constructive notice, i.e., his attorney should have known; (3) the diligence with which the plaintiff pursued his rights; (4) whether there would be prejudice to the defendant if the statute were tolled; and (5) the reasonableness of the plaintiff remaining ignorant of his rights. *Id.* at 953 (referring to *Abbott* at 646). Rose argues that applying the *Wright* factors to his case, the Secretary should have granted an equitable tolling of the limitations period.

■ He first argues that he did not have actual notice of the filing deadline because of the fact that 10 C.F.R. Part 19 and NRC Form 3 did not provide adequate notice of his "whistleblower's" rights under the ERA. Though Rose is correct that those particular regulations did not include that information, 42 U.S.C. § 5851(b)(1) makes clear that claimants under the ERA are to file their complaints with the DOL within thirty days. Since there was no requirement under the statute that employees be notified regarding their rights, no malfeasance on the part of Rose's employer and no evidence that Rose relied on the deficiencies in the cited regulations to his prejudice, it would seem that Rose is simply arguing that he was ignorant of the law. It is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling. *See City of Allentown*, 657 F.2d at 21 ("[I]gnorance of the law is not enough to invoke equitable tolling."); *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 234 (6th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974) (ignorance on the part of plaintiff of his rights is insufficient to overcome a limitations defense).

■ Rose next argues that he also did not have constructive notice of the relevant limitations period because he did not consult an attorney until December 29, 1981, some 54 days after he was discharged. Before the Secretary, Rose argued he did

---

more effective notice to employees through posting the revised regulations does not have any legal bearing on whether prior notice was inadequate. *Cf. Smith v. United Bhd. of Carpenters and Joiners of America, A.F.L.*, 685 F.2d 164, 169 (6th Cir.1982) (Keith, J., concurring) ("It is well settled that a defendant's affirmative action efforts which occur after the filing of a complaint have no bearing on the question of whether the defendant's earlier actions and policies violated Title VII."); Fed.R.Evid. 407 (general prohibition against evidence of subsequent remedial measures as evidence of prior negligence).

not see an attorney earlier because he was waiting to hear about his unemployment application and because he went on vacation with his son. The Secretary found these reasons to be insufficient to warrant equitable tolling. Rose now adds that he was misled by his employer into thinking that he did not have any rights as an employee-at-will. As explained above, there is no merit to his charges against his employer and his previously proffered excuses before the Secretary are inadequate. Therefore, we find that Rose's delay in seeking an attorney is not excusable.

Next, Rose cites *Fox v. Eaton*, 689 F.2d 91, 93 (6th Cir.1982), for the proposition that the limitations period should be tolled if a person is "prevented by circumstances beyond his control" from submitting a discrimination charge until the time when "facts that would support a charge of discrimination [would have been] apparent to a person with reasonably prudent regard for his rights similarly situated to the plaintiff." It is clear simply by reference to the language just quoted that Rose does not fall into the same category as the plaintiff referenced in *Fox*. Rose has presented no evidence to suggest that he was prevented from investigating his rights within the statutory period. Further, by his own admission, Rose suspected he was fired for his "whistleblowing" activity when he filed his unemployment application in November 1981. Thus, he was not later made aware of any new facts which he was not previously aware of with regard to his firing. *Compare Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975) (limitations period tolled because plaintiff did not learn until seven months after her dismissal that her position, which the employer had represented had been eliminated, had actually been filled by a less-qualified man). Basically, Rose's arguments boil down to the fact that he did not know about his statutory rights until he saw an attorney after the expiration of the limitations period. Absent a showing that he was somehow deterred from seeking legal advice by his employer, this is simply not enough to warrant equitable tolling.

Rose also argues that justice requires that we toll the limitations period in his case because he was fired for engaging in protected activity, and not allowing him his day in court will function to discourage others from reporting safety violations to the NRC. While we have some sympathy for this position, it was rejected by the Third Circuit in *City of Allentown*, the case relied upon by the Secretary in this case. In *City of Allentown*, in response to an argument very similar to the one put forward by Rose in this case, the court stated:

> The choice of the appropriate time [for filing actions] is not entrusted to the administrative agency or to the courts. It is the result of legislative determinations made after weighing the various interests at stake. Obviously, Congress intended that complaints be made and resolved within a very short time after the alleged violation occurred. It is not for us or the Secretary to casually ignore the statutory limitation.

657 F.2d at 20. While we might have come out differently on the equities than the *City of Allentown* court, it was not error for the Secretary to have relied on the case to deny Rose's claim. This is especially true since in *City of Allentown*, the Secretary was reversed for equitably tolling the limitations period for a plaintiff who reported safety violations in her school district under the Toxic Substances Control Act.

In his final argument, Rose claims that his dismissal violated due process because he has a statutorily-created property interest in continued employment after having reported a safety violation. Aside from the fact that this claim has no merit, it was never raised below and we will not hear it for the first time on appeal. *Sigmon Fuel Co. v. Tennessee Valley Authority*, 754 F.2d 162, 164–65 (6th Cir.1985).

### III.

For the aforestated reasons, the decision of the Secretary is AFFIRMED.