Mary LaCROIX, Plaintiff,

v.

**THE DETROIT EDISON COMPANY,**
**Defendant.**

No. 95–CV–72568–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 27, 1996.

Michael L. Pitt, Pitt, Dowty & McGehee, Royal Oak, MI, for plaintiff.

Frederic E. Champnella, Jr., Stanley H. Slazinski, Detroit Edison Co., Legal Dept., Detroit, MI, for defendant.

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

#### I. INTRODUCTION

This is an age discrimination action in which the Plaintiff alleges that her former employer, the Detroit Edison Company ("Edison"), discriminated against her because of her age in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, *et seq.* The case is presently before the Court on Defendant's Motion for Summary Judgment. Plaintiff has responded to Defendant's Motion to which response, Defendant has replied. Having reviewed and considered the parties' briefs and supporting documents, and having heard the oral arguments of counsel at the hearing held on April 25, 1996, the Court is now prepared to rule of Defendant's Motion. This Opinion and Order sets forth that ruling.

#### II. PERTINENT FACTS

Plaintiff Mary LaCroix is 49 years old. She is a former clerical employee of Detroit Edison, who worked for Edison for nearly 30 years. In 1975, Plaintiff transferred into Detroit Edison's Information Systems Organization.[1] She worked in this department for the ensuing 17 years. From approximately 1977 until January 1992, Ms. LaCroix was employed as a secretary to the director of the ISO department. In January 1992, she was assigned to another position within the ISO department, the position of "Telecommunications Dispatcher".

In March 1992, the ISO department underwent a corporate reorganization and downsizing. In the reorganization, jobs were redesigned and new jobs were created. Employees of the former ISO department were evaluated and considered for jobs within the new ISO organization through a formalized process.

As a result of the ISO reorganization, some then existing ISO employees were not selected for jobs in the reorganized department. Those who were not selected for jobs within ISO were placed into a "Corporate Skills Reserve Pool," and, through a Staffing Transition Program ("STP") were considered for vacancies elsewhere within Detroit Edison. Employees were able to remain in the Corporate Skills Reserve Pool for six months. If no job match were found for an employee in the pool within six months, he/she was offered a choice of two alternatives: the employee could agree to accept a Voluntary Separation Offer (VSO) which provided voluntary resignation and a general release of claims in exchange for substantial severance benefits. Alternatively, the employee could elect to receive a lesser separation payment which did not require the execution of a general release of claims.

Plaintiff Mary LaCroix was one of the ISO employees not selected for continued employment within the reorganized department. Thus, in May 1992, she was placed into the General Corporate Skills Reserve Pool. Efforts to find her permanent employment elsewhere within Edison were successful and in late July 1992, she was chosen for a clerical job in the company's Energy Marketing & Distribution Organization. In accordance with the provisions of Staffing Transition

---

[1] Edison refers to its various departments as "organizations".

Program, Plaintiff was paid the same salary she was paid in her previous ISO position. (The STP process provides that employees do not incur any loss of pay if the new job they are placed in has a different pay grade or level within four pay grades.)

Apparently, Ms. LaCroix did not like her job in the Energy Marketing and Distribution department because, five months after beginning in that department, in January 1993, she formally requested that an exception be made to the reorganization rules to permit her to return to the Corporate Skills Reserve Pool, with the understanding that she would have 60 days in the pool to obtain another position within the company, and if no other position were found at the end of 60 days, she would be she would be eligible for a voluntary buy-out. Her request was granted and she returned to Skills Pool. On January 22, 1993, she was given a copy of the VSO plan to review and consider. [See Defendant's Ex. 4, p. 4.]

No other position was found for Ms. LaCroix. Consequently, on February 19, 1993, she was formally offered, and formally accepted a voluntary buyout (VSO). On March 19, 1993, she voluntarily terminated her employment and obtained a severance allowance of $34,684.00 (which was the equivalent of one year's salary), in addition to health and life insurance benefits, outplacement services, and tuition reimbursement for college/technical courses taken within two years of her termination.[2]

In exchange for these severance benefits, Ms. LaCroix executed a "Full Waiver and Release of Claims" which provided, in pertinent part:

> In return for the monies and benefits received by you under this Voluntary Separation Offer of The Separation Pay Plan, YOU RELEASE AND FOREVER WAIVE ANY AND ALL CURRENT AND PAST CLAIMS, UP TO THE DATE OF SIGNING THIS AGREEMENT, AGAINST THE COMPANY AND ITS AGENTS WHICH ARISE OUT OF OR RELATE TO YOUR EMPLOYMENT AND THE TERMINATION OF YOUR EMPLOYMENT. *The claims you are releasing include, but are not limited to, ... claims of age ... discrimination, any rights and claims arising under the Age Discrimination in Employment Act of 1967 and The Older Workers Benefit Protection Act ....*

> \*    \*    \*    \*    \*    \*

> You also acknowledge that your resignation is totally voluntary, fully understanding that had you chosen not to voluntarily resign and sign this Agreement, that your employment with the Company would continue, subject to all the terms and conditions that apply to Company employees and as provided in the Staffing Transition Program.

> By signing this agreement, you also acknowledge that you have been provided with a written explanation of the group of employees covered by the Plan, the Plan's eligibility requirements and the time limits applicable to the Plan. *In addition, you acknowledge that you have been given a list of the job titles and ages of covered employees in your organizational unit eligible to participate in the Plan, as well as a list of the job titles and ages of covered employees in your organizational unit not eligible to participate in the Plan.*

> You further acknowledge that you fully understand the terms of this Voluntary Separation Offer Agreement, that you have had forty-five (45) days to consider it, to seek the advice of your attorney and/or financial adviser; and you are signing it freely and voluntarily. You also understand that you have seven (7) days from the date you present this signed Agreement to your Human Resource Consultant to revoke it and that this Release and Agreement shall not become effective or enforceable until the seven (7)-day revocation period has expired.

[Defendant's Ex. 4].

Almost 22 months after her termination of employment (and 28 months after being ini-

---

2. The VSO did not affect Plaintiff's eligibility for or entitlement to retirement benefits under the Edison Employees' Retirement Plan.

tially placed in the Skills Reserve Pool), on January 6, 1995, Ms. LaCroix filed an age discrimination complaint with the EEOC in which she charged:

> From March 1, 1991 through December 30, 1991, I was subjected to harassment by the Director of [Information] Processing Systems regarding my working hours, my wages, and terms and conditions of my employment.
>
> **On March [sic, May] 15, 1992, I was unjustly placed in a Staffing Transition Pool.**
>
> I believe that I was treated in the above stated manner due to my age, 48, in violation of the Age Discrimination in Employment Act of 1967, as amended.

[Defendant's Ex. 6.]

On March 29, 1995, the EEOC dismissed her charge as untimely and issued her a "Notice of Right to Sue".

On June 26, 1995, Plaintiff filed her Complaint in this Court for violation of the Age Discrimination in Employment Act alleging that Edison discriminated against her because of her age when she was removed from the ISO unit and placed in the Skills Reserve Pool in May 1992. Edison has now moved for summary judgment contending that Plaintiff's action is time-barred and precluded by virtue of her execution of the waiver and release of all claims. Edison further contends that, on the merits of her claim, Plaintiff cannot make out a *prima facie* case of age discrimination.

## III. *DISCUSSION*

### A. *STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT*

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[3] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

---

**3.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."

10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure,* § 2727, at 33 (1993 Supp.).

\* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). *See also, Nernberg v. Pearce*, 35 F.3d 247, 249 (6th Cir.1994).

## B. *STATUTE OF LIMITATIONS*

In states such as Michigan, which have their own laws forbidding age discrimination, a plaintiff must file a claim of ADEA violation with the EEOC "within 300 days after the alleged unlawful practice occurred," 29 U.S.C. § 626(d)(2), failing which, any suit under the ADEA filed in the federal district court will be dismissed as untimely. *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir.1987). In this case, Plaintiff complains of her initial placement in the Corporate Skills Reserve Pool in May 1992. Thus, to have been timely, her EEOC charge would have had to have been filed within 300 days of that placement. However, Plaintiff did not file her EEOC charge until January 6, 1995—952 days after she was denied continued employment in the ISO department, and 650 days after her voluntary termination of employment. Clearly, as the Civil Rights Commission found, Plaintiff's EEOC charge was not timely.

■ . Plaintiff argues that the Court should equitably toll the limitations period and disregard the untimeliness of her EEOC charge. In *Wright v. State of Tennessee*, 628 F.2d 949 (6th Cir.1980) (en banc), the Sixth Circuit held that the time requirements for filing an EEOC charge set forth in § 626(d) of the ADEA are not jurisdictional, but rather should be treated like a statute of limitations and, therefore, subject to equitable tolling if the facts of the case so warrant. The *Wright* court suggested that in determining whether equitable tolling is appropriate in a given case, courts should consider the factors

articulated in *Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. 643 (D.N.H.1977). Those factors are: (1) whether the plaintiff lacked actual notice of the filing requirements; (2) whether the plaintiff lacked constructive notice of the requirements, e.g., as where the plaintiff secures an attorney who is thereby charged with presumptive knowledge of the law's requirements; (3) the diligence with which the plaintiff pursued his rights; (4) whether there would be prejudice to the defendant if the statute were tolled; and (5) the reasonableness of the plaintiff remaining ignorant of filing requirements. *Wright, supra*, 628 F.2d at 953 (referring to *Abbott* at 439 F.Supp. at 646); *EEOC v. Kentucky State Police Dept.*, 80 F.3d 1086, 1094 (6th Cir.1996).

■ Plaintiff in this case argues that the Court should equitably toll the 300–day time limit in her case because it was not until more than a year after the limitations period had expired, on December 10, 1994, when she attended a meeting with other Detroit Edison employees and attorneys who were involved in a class action suit against Edison in state court, *Gilford v. The Detroit Edison Co.*, Wayne County Circuit Court No. 93–333–296–NO, that she "discovered" that she may have a claim of age discrimination.

Ms. LaCroix claims that she learned from the attorneys at that December 10, 1994 meeting that, through discovery in the *Gilford* case, they found that Edison employees involved in that case may not have received lists of retained and deselected employees which they had acknowledged receiving in accepting their VSO severance packages. [See Plaintiff's Affidavit, ¶ 2.] She claims that it was not until then that she realized that she did not receive a list of retained and deselected employees, either. *Id.* She further claims that at that December 10, 1994 meeting she learned from the lawyers present that the release she signed [acknowledging that she received the list of retained and deselected employees] might have been defective and that she might have an opportunity to litigate her age-discrimination claim. *Id.* at ¶ 16. Therefore, she argues that the Court should equitably toll the 300–day limitation period for filing an EEOC

charge, and deem her filing of a charge within 30 days of the December 10, 1994 meeting timely.

Plaintiff's argument is similar to the argument of the plaintiff in *Rose v. Dole*, 945 F.2d 1331 (6th Cir.1991). In *Rose*, the plaintiff argued for an equitable tolling of the 30–day limitations period for filing his complaint of discriminatory discharge under the Energy Reorganization Act, 42 U.S.C. § 5851. Rose did not consult with a lawyer until 54 days after his discharge. He argued that his employer had led him to believe he had no right to challenge his termination because he was an at-will employee and he did not learn that he had any such rights until he consulted with a lawyer. Therefore, he argued that the limitations period should be tolled until the date he first talked to a lawyer. Applying the *Abbott* factors discussed *supra*, the Sixth Circuit flatly rejected Rose's argument, explaining:

> Rose has presented no evidence to suggest that he was prevented from investigating his rights within the statutory period.... Basically, Rose's arguments boil down to the fact that he did not know about his statutory rights until he saw an attorney after the expiration of the limitations period. *Absent a showing that he was somehow deterred from seeking legal advice by his employer, this is simply not enough to warrant equitable tolling.*

*Id.* at 1336 (emphasis added).

Similarly, Plaintiff here asks the Court to toll the statutory limitations period until she talked to an attorney *almost two years after the expiration of the statutory period.* Plaintiff admits that she read the waiver and release when she signed the Voluntary Separation Offer Agreement. She acknowledged that Edison counseled her in the agreement and release "to seek the advice of your attorney" before signing it. Plaintiff, however, did not do so until two years after-the-fact. There is nothing to suggest that Edison did anything to preclude Plaintiff from consulting with a lawyer during the 300–day statutory period. Plaintiff simply failed to exercise reasonable diligence in pursuing her rights. Thus, she is not entitled to an equitable tolling of the limitations period.

Plaintiff asks the Court to find her situation analogous to other district court cases outside of the Sixth Circuit in which the courts held that an employer's failure to post the required ADEA Notice of Rights in the workplace warrants equitable tolling of the 300–day limitations period for such time as the plaintiffs remained without actual knowledge of the filing requirements. *See* cases cited at pp. 9–11 of Plaintiff's Response Brief. Those cases, however, are clearly factually distinguishable. The notices which the employers in those cases failed to post would have explicitly contained the time limits for filing discrimination complaints. Because the employers failed to post the notices, the courts determined that it was because of the employers' conduct that the plaintiffs did not comply with the time requirements for filing complaints. Therefore, the courts precluded the employers from relying on the statute of limitations as a defense. There is nothing in this case to suggest that Edison concealed from Plaintiff the time limits for filing a charge of discrimination.

Moreover, to the extent that Plaintiff's argument is that she did not "discover" her ADEA rights until the December 10, 1994 meeting, that argument is inconsistent with her Complaint and EEOC charge allegations that because of her age Edison harassed her and altered her working conditions *beginning in 1991.* If Plaintiff was harassed beginning in 1991, then she was aware of it and could have pursued at that time. Furthermore, Plaintiff admits that she learned in February 1994 that her good friend and former Edison co-worker who was also placed in the Corporate Staffing Pool was suing Detroit Edison for age discrimination. Yet, Ms. LaCroix still delayed for almost another year before filing her charge.

In *Klausing v. Whirlpool Corp.*, 623 F.Supp. 156, 160–61 (S.D.Ohio 1985), the plaintiff sought an equitable tolling of the limitations period arguing that, although he had suspected that he was demoted because of his age, he did not have specific facts of age discrimination until he learned such specific facts from another former Whirlpool employee who had prevailed on an ADEA claim. The plaintiff contended that he did

not know he could file a claim without specific facts. The court rejected the plaintiff's argument adhering to the general rule that "ignorance of legal rights or a failure to seek legal advice does not toll a statute of limitations." *Id.* at 161.

Similarly, Plaintiff in this case clearly was in a position to file a timely EEOC charge but *by her own inaction* failed to do so. She simply has failed to demonstrate due diligence in pursuing an age discrimination claim.

The Court further finds that equitable tolling of the period of limitations in this case would be particularly inappropriate given the prejudice to Defendant that would result. As indicated above, the degree of prejudice to the defendant is one of the factors that courts in this circuit have been directed to consider in determining whether a statute of limitations should be tolled. *See Wright v. State of Tennessee, supra,* 628 F.2d at 953; *EEOC v. Kentucky State Police Dept., supra,* 80 F.3d at 1094.

At oral argument, Defendant stated that given record storage constraints, Edison did not retain copies of everything contained in the VSO packets provided to employees considering the plan. Defendant also advised that its personnel employees who participated with Plaintiff in preparing her "packet" for the VSO are no longer employed by Edison. Under these circumstances, the Court finds that if the limitations period were to be tolled to permit Plaintiff to go forward with her case, Defendant would be severely prejudiced in its defense of the action.

## B. THE RELEASE AND WAIVER OF RIGHTS

■ Plaintiff intertwines her "equitable tolling" argument with her argument that the release and waiver of rights she executed in accepting the Voluntary Separation Offer is invalid.

Section 626(f) of ADEA sets forth the requirements for a valid waiver of ADEA rights:

**(f) Waiver**

(1) An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary.... [A] waiver may not be considered knowing and voluntary unless at a minimum—

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or

(ii) if a waiver is requested in connection with a class incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, *the employer* (at the commencement of the period specified in subparagraph (F)) *informs the individual in writing* in a manner calculated to be understood by the average individual eligible to participate, *as to—*

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

*(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.*

\*    \*    \*    \*    \*    \*

(3) In any dispute that may arise over whether any of the requirements, conditions, and circumstances set forth in subparagraph (A), (B), (C), (D), (E), (F), (G), or (H) of paragraph (1) ... have been met, *the party asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary pursuant to paragraph (1)* . ...

29 U.S.C. § 626(f)(1), (3) (emphasis added).

Plaintiff argues the waiver and release she executed in accepting Edison's Voluntary Separation Offer is invalid for failure to comply with the provisions of § 626(f)(1). The only provision which Plaintiff claims was not complied with by Edison is ¶ (H)(ii). She contends that she did not get a list of job titles and ages of retained and deselected employees. Defendant, however, has produced a copy of the waiver and release executed by Plaintiff in February 1993 in which she expressly acknowledged receiving the section 626 list. [See Defendant's Ex. 4, p. 2.] Further, the list produced by Defendant [Defendant's Ex. 7] complies with the statutory requisites.[4] Thus, Defendant has met its burden under Section 626(f)(3).

Plaintiff admits that she read the waiver and release she executed and her acknowledgment of receipt of the list set forth therein. Nonetheless, she now claims despite having acknowledged receiving the list, she never was provided with one. Plaintiff, however, has not produced her VSO packet or her copy of the acknowledgment and waiver *without* the list to substantiate her contention.

In support of her denial of having received the section 626 list of retained and deselected employees, Plaintiff claims that she did not realize that she did not get a list until she attended a meeting of some former Edison employees and a number of attorneys in December of 1994, where she learned that other Edison employees did not receive a list. The Court finds this "evidence" insufficient to overcome Defendant's documentary proof of Plaintiff's acknowledgment of receipt. It is not enough for Plaintiff to say, "I did not get the list and only learned I did not get one when I heard other employees say they acknowledged receiving a list, but never actually received one." Such evidence is clearly hearsay, and, at best, amounts to nothing more than a "scintilla of evidence", insufficient to withstand summary judgment.

Furthermore, even assuming the Edison waiver is defective, Plaintiff errs in commingling the defective waiver with her failure to comply with the statute of limitations. A defective waiver would only preclude Defendant from relying on the waiver. It does not excuse compliance with the statute of limitations. As discussed above, Plaintiff here has not shown that she exercised due diligence in the pursuing her claim of discrimination within the statutory period so as to excuse her compliance with the 300–day limit, and the record establishes that if the Court were to excuse her compliance with the limitations period, Defendant would be severely prejudiced.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Accordingly, Plaintiff's ADEA claim will be DISMISSED with prejudice.

Let Judgment be entered accordingly.

---

**4.** As legal support, Plaintiff relies upon *Raczak v. Ameritech*, No. 93–72697, 1994 WL 780899 (appeal pending), in which Judge Cohn found Ameritech's ADEA waiver to be defective. *Raczak*, however, is inapposite. The defect found by Judge Cohn in the Ameritech waiver was Ameritech's *use of salary grade classifications rather than job titles* as required under the statute. In this case, the list given by Edison to VSO participants complied with the statutory requirements of job titles and ages.

*JUDGMENT*

The Court having this date entered an Opinion and Order granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's Complaint with prejudice; and being fully advised in the premises,

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that a JUDGMENT OF DISMISSAL WITH PREJUDICE be, and hereby is entered.