In re Thomas ROMANO, Debtor.

Erie Insurance Company, Plaintiff,

v.

Thomas Romano, Defendant.

Bankruptcy No. 98–35504.
Adversary Nos. 00–5234, 00–3274.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 23, 2001.

James Perlman, Calamunci, Groth, Jeolson & Manore Co., LPA, Toledo, OH, for Defendant–Debtor.

Steven Hales, Bracy & Kuhl Co., LPA, Toledo, OH, for Plaintiff.

## ORDER RE: MOTION TO DISMISS

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter comes before the Court on defendant-debtor's motion to dismiss plaintiff's complaint (the "Motion to Dismiss") and plaintiff's response thereto. After the parties were given additional time in which to file memoranda in support of their respective positions they informed the Court, through a joint pleading, that they did not wish to present any evidence on the matter and that they would each stand upon their written pleadings alone. Thereafter the matter was taken under advisement.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I) over

which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).[1]

## BACKGROUND

In deciding upon a motion to dismiss, the Court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In the instant case, those allegations are as follows:

1. Plaintiff is a surety of Allen County Electric, Inc. ("ACE") whose principal officer is defendant-debtor, Thomas Romano.

2. In April 1994, plaintiff entered into an agreement with ACE for surety bonds for contracts between ACE and certain third parties. ACE failed to perform under contracts with those third parties and plaintiff, pursuant to its surety agreement with the ACE, paid on the surety bonds.

3. Thomas and Deborah Romano, as indemnitors of the surety bonds, became liable to plaintiff once payments under the surety bonds were made.

4. On December 15, 1998, Thomas Romano filed a voluntary chapter 7 bankruptcy petition.

5. Thomas Romano's indemnity obligation to plaintiff was listed as a debt in his chapter 7 case. Plaintiff did not file an objection to the dischargeability of that debt in the chapter 7 case and Mr. Romano received a discharge in April 1999.

---

1. Pursuant to Local Bankruptcy Rule 1071–1, both defendant-debtor's main chapter 7 case and this adversary proceeding were filed in the Bankruptcy Court located in Toledo, Ohio and assigned to the docket of Chief Judge Richard Speer. Through an Order entered by Judge Speer on December 20, 2000, this adversary proceeding was transferred to the Bankruptcy Court located in Akron, Ohio and now pends on the docket of Judge Marilyn Shea–Stonum.

6. Given Mr. Romano's discharge, plaintiff, in March 1999, filed a complaint in the Common Pleas Court of Allen County, Ohio against only Deborah Romano to recover on her indemnity obligation (the "State Court Case").

7. In conjunction with the State Court Case plaintiff, on June 6, 2000, took the deposition of the individual who notarized the signatures of Thomas and Deborah Romano on the bond documents. As a result of that deposition, plaintiff had reason to question whether the signatures of Deborah Romano were forged.

8. Thereafter, plaintiff employed a handwriting analyst whose investigation and subsequent report (which was issued on September 28, 2000), concluded that the signatures of Deborah Romano on the bond documents were not authentic.

9. Plaintiff dismissed the State Court Case in October 2000. Because it believed that Thomas Romano was responsible for the forged signatures of his wife, plaintiff, on November 9, 2000, initiated this adversary proceeding and claims that the monies owed to it by Mr. Romano should not be discharged through his chapter 7 bankruptcy case pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

10. The deadline for filing complaints objecting to the dischargeability of a debts in Mr. Romano's chapter 7 case was fixed at April 9, 1999.

**DISCUSSION**

In the Motion to Dismiss, defendant-debtor contends that plaintiff's action against him is time barred as complaints objecting to the dischargeability of debts were to be filed by April 9, 1999 and the instant matter was not initiated until well after that date. Given the background facts in this case, plaintiff contends that its failure to abide by the April 9, 1999 filing deadline should not bar it from prosecuting this adversary proceeding and that this filing deadline should be equitably tolled.

■ The time deadline for objecting to the dischargeability of particular debts is established pursuant to FED. R. BANKR. P. 4007(c).[2] In *In re Begue*, 176 B.R. 801 (Bankr.N.D.Ohio 1995), this Court held that the Rule 4007(c) deadline is not jurisdictional but is instead a statute of limitations which, under certain circumstances, may be equitably tolled. *Accord European American Bank v. Benedict (In re Benedict)*, 90 F.3d 50, 54 (2nd Cir.1996). The issue before the Court, as framed by the parties' pleadings is, therefore, whether or not equitable tolling should apply in this case.[3]

---

**2.** Bankruptcy Rule 4007(c) sets forth, in part, that "[a] complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." *See* FED. R. BANKR. P. 4007(c). Section 523(c) of the Bankruptcy Code, in turn, provides that "[e]xcept as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed ... the court determines such debt to be excepted from discharge ...." *See* 11 U.S.C. § 523(c)(1).

**3.** In a memorandum supporting the Motion to Dismiss, defendant-debtor contends that this Court's decision in *In re Begue* was incorrect and should not be followed in this case. *See* "Reply Memorandum" at page 1 **[docket # 7]**. Aside from a cursory discussion of arguments that were considered and rejected when the Court made its decision in *In re Begue*, defendant-debtor sets forth no other legal basis for a reconsideration of that opinion. Accordingly, defendant-debtor's conten-

Equitable tolling will apply when a plaintiff, through no fault of its own and despite the exercise of due diligence, cannot determine information essential to bringing a complaint in a timely manner. *Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7th Cir.1998); *Equal Employment Oppor. Comm'n v. Kentucky State Police Dept.*, 80 F.3d 1086, 1095 (6th Cir.1996). In determining whether the doctrine of equitable tolling should be applied, the Sixth Circuit Court of Appeals has set out several factors for courts to consider: (1) the lack of actual notice of the filing requirement; (2) the lack of constructive knowledge of the filing requirement; (3) the diligence used by the plaintiff in pursuing its rights; (4) the absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the notice requirement. *In re Begue*, 176 B.R. 801, 804 (Bankr.N.D.Ohio 1995), *citing Glarner v. Dep't of Veterans Admin.*, 30 F.3d 697, 702 (6th Cir.1994). Each of these factors will be discussed, in turn, below.

***The Lack of Actual or Constructive Notice of the Filing Requirement:*** Although plaintiff had knowledge of the April 9, 1999 filing deadline in defendant-debtor's chapter 7 case, it did not also have knowledge that defendant-debtor may have perpetrated a fraud in relation to the indemnity agreement, thus giving rise to a claim of nondischargeability.[4] One of the purposes of the Rule 4007(c) time deadline is to promote efficient and expeditious administration of an estate by requiring creditors to assert their rights against a debtor in a fairly short period of time after a bankruptcy is filed. A creditor cannot,

however, be expected to act within this short time deadline unless it knows or should know that it has rights to assert against the debtor in his bankruptcy case. This is especially true where, as alleged in this case, it was defendant-debtor's fraud that prevented plaintiff from knowing about the potential basis for having the associated claim determined to be nondischargeable under the Bankruptcy Code. Here, plaintiff mistakenly believed that it could recover on its indemnity claim by pursuing defendant-debtor's co-obligor through the State Court Case. *See* 11 U.S.C. § 524(e).

Based upon the facts set forth in plaintiff's complaint, it did not actually learn of defendant-debtor's alleged fraud until well after the April 9, 1999 filing deadline and there is nothing in the record to indicate that plaintiff should have learned of that alleged fraud any earlier than it did. Accordingly, the Court finds that plaintiff did not have actual or constructive knowledge of the Rule 4007(c) filing requirement relative to its yet undiscovered nondischargeability claim against defendant-debtor pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

***The Diligence Used by Plaintiff in Pursuing its Rights:*** In a situation where fraud prevents a party from timely filing a complaint, equitable tolling is permitted until the fraud or concealment is, or should have been, discovered. *Iavorski v. United States Immigration and Naturalization Serv.*, 232 F.3d 124, 134 (2nd Cir. 2000) (citations omitted). However, once a party becomes aware of the fraud, it must

---

tion that the *In re Begue* decision is incorrect will not be discussed further.

**4.** Plaintiff bases its complaint in this adversary proceeding on § 523(a)(2)(A) of the Bankruptcy Code which provides that a discharge in a chapter 7 bankruptcy will not

discharge an individual debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by ... false pretenses, a false representation, or actual fraud ...."

act with due diligence in asserting its rights.

It appears that plaintiff was diligent in pursuing its claim for indemnification but that, because of defendant-debtor's alleged fraud, its diligence was directed at the wrong party. Plaintiff's first indication that defendant-debtor may have acted fraudulently was on June 6, 2000 when it took the deposition of the individual who purportedly notarized the signatures of Thomas and Deborah Romano on the bond documents. The fact that Mrs. Romano's signatures might not be authentic was confirmed by the handwriting expert's report which was issued on September 28, 2000. The within action was then filed 41 days later on November 8, 2000.

As noted above, nothing in the record indicates that plaintiff should have learned of defendant-debtor's alleged fraud any earlier than the June 6th deposition of the notary. Moreover, nothing in the record demonstrates that plaintiff was not acting diligently when it engaged the services of a handwriting expert before dismissing the State Court Case and filing this adversary proceeding. Finally, when the handwriting expert's report was issued, only a little more than one month elapsed until plaintiff initiated this adversary proceeding. Based upon this sequence of events, the Court finds that plaintiff was acting with diligence in pursuing its rights.

■ *The Absence of Prejudice to Defendant:* Considerations weighing in favor of equitable tolling must be weighed against the possibility that a defendant will suffer prejudice as a result of the delay. *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 561 (7th Cir.1996). Defendant-debtor contends that he would be prejudiced if plaintiff were allowed to prosecute this adversary proceeding because (1) he has had to retain counsel two years after his chapter 7 bankruptcy filing and (2) he

and his counsel will suffer time and financial burdens by having to travel from Toledo to Akron to defend the matter. *See* "Reply Memorandum" at page 2 [**docket # 7**].

Much of the discovery that plaintiff would need to prosecute this adversary proceeding (i.e., depositions of defendant-debtor, Mrs. Romano, and the notary public and the report of a handwriting expert) was completed in the State Court Case and, through discovery in this action, could be made available to defendant-debtor and his counsel without much additional cost. Also, much of what plaintiff would need to prove in this matter (i.e., that defendant-debtor made a knowingly false representation with an intent to deceive plaintiff) is available to defendant-debtor without any cost as it goes to his state of mind at the time he executed the bond documents. *Cf. LaCroix v. The Detroit Edison Co.,* 964 F.Supp. 1144 (E.D.Mich.1996) (given the passage of time, the fact that defendant had not retained copies of necessary documents, and the fact that necessary employee-witnesses were no longer in defendant's employ, defendant would be severely prejudiced and equitably tolling should not apply). Moreover, this Court generally allows out-of-town counsel (and out-of-town parties, if their participation is required) to appear at pre-trial conferences via telephone. Therefore, although defendant-debtor will be required to incur some additional costs and may suffer some inconvenience if plaintiff were allowed to proceed, the prejudice alleged by defendant-debtor is not so great as to outweigh the potential detriment that plaintiff would suffer if it were not allowed to prosecute its claim against defendant-debtor.

*Plaintiff's Reasonableness in Remaining Ignorant of the Notice Requirement:* As discussed above, there is nothing in the record before the Court to indicate that, as

of defendant-debtor's bankruptcy filing, plaintiff knew or should have known of the alleged fraud and the corresponding action for nondischargeability pursuant to § 523(a)(2)(A) of the Bankruptcy Code. Accordingly, plaintiff was not unreasonable in ignoring that deadline during the pendency of defendant-debtor's chapter 7 case.[5]

## CONCLUSION

Based upon the foregoing, the Court finds that the Rule 4007(c) deadline for filing complaints objecting to the dischargeability of debts in defendant-debtor's main chapter 7 case was equitably tolled and that plaintiff's complaint in this adversary proceeding was timely filed.

**THEREFORE, IT IS HEREBY ORDERED:**

1. That the Motion to Dismiss is **DENIED**;

2. That defendant-debtor shall have until not later than *June 4, 2001* to file an answer to plaintiff's complaint;

3. That by not later than *June 11, 2001,* plaintiff and defendant-debtor shall have complied with the requirements of this Court's Pre–Trial Order, entered on January 2, 2001;

4. That a further pre-trial conference shall be held in this matter on *June 13, 2001* at *3:30 p.m.,* in Room 250, U.S. Courthouse and Federal Building, 2 South Main Street, Akron, Ohio; and

5. That counsel may appear telephonically at the June 13th pre-trial conference provided that they inform the Court of their desire to do so by not later than *June 12, 2001.*

---

5. Although not addressed by either party, the potential application of § 523(a)(3)(B) of the Bankruptcy Code also bears mention. That provision of the Bankruptcy Code sets forth that a discharge under chapter 7 will not discharge an individual debtor from any debt

> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> \*    \*    \*    \*    \*    \*
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

In the Schedules, the only claim defendant-debtor listed plaintiff as holding was a contractual claim for indemnity. What was not listed, however, was a tort claim for fraud and because plaintiff had no reason to know that this tort claim existed, it did not have the requisite notice to enable it to timely file a complaint pursuant to § 523(a)(2). Since an unscheduled tort debt is treated under § 523(a)(3)(B), a complaint to determine nondischargeability may be brought at any time.

Section 523(c), by its own terms, does not apply to Section 523(a)(3)(B) claims. Therefore, the exclusive jurisdiction provisions of Section 523(a)(c) are not applicable to the issue of dischargeability under Section 523(a)(3)(B). The time limitation of Bankruptcy Rule 4007(c) is also inapplicable, since that Rule applies only to complaints under Section 523(c), not to complaints under Section 523(a)(3)(B). In effect, a debtor who failed to list a creditor loses the jurisdictional and time-limit protections of Section 523(c) and Rule 4007(b) [sic, should be 4007(c)] with respect to that creditor.
*In re Strano,* 248 B.R. 493, 499–500 (Bankr. D.N.J.2000) (alteration in original) (*citing In re Mendiola,* 99 B.R. 864, 868 n. 6 (Bankr. N.D.Ill.1989)).