22-843-cv
*Doe v. United States*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Submitted: May 16, 2023
Decided: August 1, 2023
Amended: August 4, 2023

No. 22-843

JANE DOE,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND
SECURITY, KEVIN MCALEENAN, in his official capacity as Acting Secretary of US
Department of Homeland Security, UNITED STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT, MATTHEW T. ALBENCE, Acting Director of US Immigration and
Customs Enforcement, WILFREDO RODRIGUEZ, in his official capacity as an agent
of US Immigration and Customs and in his individual capacity,

*Defendants-Appellees*,

Appeal from the United States District Court
for the District of Connecticut
No. 19-cv-1649, Sarah A.L. Merriam, *Judge*.

Before:    CALABRESI, LEE, NATHAN, *Circuit Judges*.

Plaintiff-Appellant Jane Doe alleges she was sexually and psychologically abused by Defendant-Appellee Wilfredo Rodriguez, a former Immigration and Customs Enforcement officer. Four years after the abuse ended, Doe initiated this action against Rodriguez and various government defendants. The Defendants moved for summary judgment, arguing Doe's claims were untimely. Doe asked the district court to equitably toll the applicable statutes of limitations. The court granted summary judgment for Defendants. Applying the prototypical summary judgment standard, it held that as a matter of law equitable tolling was unavailable because no reasonable factfinder could conclude that Doe demonstrated that an extraordinary circumstance stood in her way or that she was reasonably diligent in pursuing her claims. Drawing every inference in favor of the non-moving party, we conclude that a reasonable district court acting as factfinder could reach the contrary conclusion. Accordingly, we **VACATE** and **REMAND**.

————

GEORGE W. KRAMER, Rocky Hill, CT, *for Appellant*.

Brian M. Boynton, *Principal Deputy Assistant Attorney General*, Mark Stern, LOWELL V. STURGILL JR., *Attorneys, U.S. Department of Justice*, Washington, D.C., *for Appellees United States of America, U.S. Department of Homeland Security, Kevin McAleenan, U.S. Immigration and Customs Enforcement, Matthew T. Albence*.[*]

TRENT A. LaLIMA, Virginia M. Gillette, Santos & LaLima, P.C., Hartford, CT, *for Appellee* Wilfredo Rodriguez.

[*] The original version of this Opinion included Vanessa Avery, United States Attorney for the District of Connecticut, in the list of counsel for Appellees. By letter dated August 1, 2023, the United States informed this Court that Attorney Avery's office is recused in this matter and her appearance on the cover of the Government's appellee brief was an inadvertent error.

_____

NATHAN, *Circuit Judge*:

Plaintiff Jane Doe alleges that for a period of seven years, she suffered sexual, physical, and psychological abuse at the hands of Wilfredo Rodriguez, an Immigration and Customs Enforcement (ICE) officer. Four years after the alleged abuse ended, Doe brought this action against Rodriguez, the United States, the Department of Homeland Security, and two senior DHS officials, asserting various federal and state claims. The district court granted Defendants' motions for summary judgment based on the applicable statutes of limitations and denied Doe's request for equitable tolling. We hold that the district court erred in granting summary judgment because the evidence in the record could have allowed it to conclude that the prerequisites for equitable tolling were met. That is, this record makes plausible the inferences that years of violent sexual abuse and threats to Doe's life constituted an extraordinary circumstance preventing Doe from sooner pursuing her claims, and that she acted with reasonable diligence. We therefore **VACATE** the order of the district court holding that Doe is not entitled to equitable tolling as a matter of law and **REMAND** for further proceedings.

## BACKGROUND

### I. Facts

This case was decided on a summary judgment record containing only the Plaintiff Jane Doe's substantive testimony. The following facts are drawn from her submitted testimony. In 2006, Doe, a native of Honduras, visited the ICE office in Hartford, Connecticut to see her brother, who she believed was detained there. She spoke with Defendant then-ICE Officer Wilfredo Rodriguez, who said her brother had been taken to jail elsewhere. Rodriguez asked Doe for her passport, took the passport to an interior office, and told her that there was an order of deportation for her and that he could arrest her. Rodriguez agreed to allow Doe to leave, but he instructed her to call him after she left the building. Doe did so, and Rodriguez told her that he would come to her house to talk with her. That evening at Doe's house, Rodriguez told her that he would help her remain in the country with her children if she provided him and another ICE officer, Ron Preble, information about other Hondurans who were in the country without legal status. Rodriguez and Preble gave Doe an order of supervision requiring her to regularly

report to them, which Doe understood would "freeze her order of deportation." App'x 6 ¶ 30.

From 2006 through the fall of 2012, Doe had frequent contact with Rodriguez, Preble, and a third ICE employee, Michelle Vetrano, and she gave them information regarding individuals ICE was looking for. In January 2007, Rodriguez instructed Doe to meet him at a motel so he could show her a picture of a person he wanted help identifying. Doe testified that the following then occurred:

> [W]hen I arrived, I went into the room . . . and I said, "Okay. What's the information," so I could leave. He didn't show me anything. All he told me was that I had to have sexual relations with him. And . . . he told me that if I didn't have intercourse with him, that he could harm me. And I thought that he was fooling around, but he said, "No." And that if I didn't do it, he was going to harm me. And he threw me onto the bed. With his firearm, he pointed it at my ribs. . . . I told him once again that I couldn't . . . do that because I was married; that I hadn't agreed to do anything else except work. And afterwards, he didn't let me speak, and he raped me with the firearm set on my side on my ribs.

App'x 135.

According to Doe, for the next seven years, until the fall of 2014, Rodriguez regularly raped Doe in various locations, including in a government vehicle and

5

at his home. Rodriguez used threats of violence and deportation to maintain his control over Doe and keep her from reporting the assaults. Rodriguez also forced Doe to do tasks and pay for things for him and treated her as his "slave." App'x 249–50.

Doe testified that Rodriguez's assaults caused her bruises and other injuries. On one occasion, Doe went to Rodriguez's home intending to break off contact with him. When she arrived and began to speak, he took out a thin piece of metal, heated it on a stove, and burned her abdomen with it, leaving three scars that remain visible to this day.

Doe concedes that she was aware as early as January 2007 that she had a potential cause of action. However, for many years, Doe did not tell anyone about the assaults and in fact concealed them. Officer Vetrano once asked Doe if she was seeing Rodriguez outside of the ICE office, and Doe answered "no," because she was "under a threat." App'x 165. Doe's husband began to suspect something was going on due to Doe's increasing use of sleeping pills. One day in 2010, Doe's husband overheard her speaking with Rodriguez and discovered something was

happening between them. However, Doe did not tell her husband the full extent of the situation and Doe's husband never reported that Rodriguez was raping her.

According to Doe's testimony, the assaults resulted in three pregnancies in 2007, 2009 or 2010, and 2013, each of which Doe terminated on Rodriguez's instruction and at least once with his financial assistance. Rodriguez's actions also took a severe toll on Doe's mental health. In addition to her developing a dependency on sleeping pills, Doe attempted suicide on three occasions. Doe sought help for her mental health issues, though she never told her doctors of the assaults, even when asked directly.

In 2014, Rodriguez informed Doe that he was leaving ICE and threatened her one final time not to tell anyone about his abuse. Rodriguez said, "If you go and ruin my life, I'll kill you," and he implied he had gang connections. App'x 171, 177. Rodriguez stopped abusing Doe after this, and eventually they stopped having contact.

Doe maintained her silence until Spring 2018, when an ICE agent called her and asked to speak regarding Doe's father's application for asylum. Her father's

7

asylum claim was based on his fear that if he were deported, he would be retaliated against by people in Honduras whom Doe had helped ICE deport. Doe initially indicated she was afraid to speak with the ICE agent, but eventually assented to a meeting.

At the meeting, Doe ultimately recounted some details about Rodriguez's assaults. Doe testified that she decided to report what happened to her because "when [she] saw [her] father with the [electronic monitoring] cuff on his leg and they had deported [her] brother and [her] brother-in-law, that's when [she] could not do it anymore." App'x 268. Although Doe's fear of Rodriguez had "never really gone away," Doe felt "desperate" to save her father from deportation and felt that revealing the real nature of her relationship with Rodriguez and ICE would help clarify why her father had reason to fear retaliation in Honduras. App'x 268, 270. This was especially so because the interviewing agents were initially skeptical of Doe's claim that she got a work permit in exchange for acting as an informant. Doe also explained that some of the people she'd informed on knew her identity because, on one occasion,

> Rodriguez exposed me. . . . [H]e wanted me to perform oral sex on him while we were in the Immigration van. . . . He threatened me. I didn't want to do it, so he opened the door and exposed me. There were many people out there. Then they saw me that I was the one that was sending the people home, having the people deported.

App'x 270. When Doe made her initial disclosure to ICE in the spring of 2018, the agents advised her to retain an attorney, which she did, and with her attorney's assistance she began pursuing this case.

## II. Procedural History

On July 20, 2018, approximately two months after Doe informed ICE of Rodriguez's assaults, Doe submitted an administrative claim to DHS, and DHS denied her claim. Then Doe initiated this action against Rodriguez in his individual capacity, as well as against the United States, DHS, ICE, and two federal officials in their official capacities. Doe's complaint asserts claims for assault, battery, and intentional infliction of emotional distress against the United States under the Federal Tort Claims Act (FTCA); a state law negligence claim against ICE and DHS for allowing Rodriguez to have contact with Doe outside of ICE offices; and Fourth and Fifth Amendment claims against Rodriguez in his individual capacity, presumably, though not explicitly, under *Bivens v. Six*

9

*Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Rodriguez was deposed but invoked the Fifth Amendment in response to every question.[1]

Following discovery, the United States, ICE, DHS, and the two official capacity individual defendants moved for summary judgment on the FTCA and state negligence claims, arguing that Doe failed to file a timely administrative claim within two years of her alleged injuries as the FTCA requires. *See* 28 U.S.C. §§ 2675(a), 2401(b). Rodriguez, acting in his individual capacity and represented by private counsel, also moved for summary judgment, arguing that Doe's *Bivens* claims should be dismissed under Connecticut's applicable three-year statute of limitations.

The district court granted summary judgment for all Defendants based on timeliness. The court observed that "[e]ven assuming the assaults did not end until December 31, 2014, and that the cause of action did not accrue until the *end*

---

[1] "[W]hile the Fifth Amendment precludes drawing adverse inferences against defendants in criminal cases, it 'does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

of the course of conduct, the FTCA two-year limitations period would have run on December 31, 2016, and the *Bivens* three-year limitations period would have run on December 31, 2017, well before plaintiff presented her FTCA claim or filed this action." *Doe v. United States*, No. 19-cv-1649, 2022 WL 903368, at *5 (D. Conn. Mar. 28, 2022). The court held that Doe's claims were not subject to equitable tolling because, as a matter of law, Doe could not establish on this record that she had diligently pursued her claims and that extraordinary circumstances prevented her from timely filing. *Id.* at *5–9. Doe timely appealed.

## STANDARD OF REVIEW

"When a district court determines that equitable tolling is inappropriate, we review the legal premises for that conclusion *de novo*, the factual bases for clear error, and the ultimate decision for abuse of discretion." *DeSuze v. Ammon*, 990 F.3d 264, 268 (2d Cir. 2021). Therefore, "[t]he operative review standard in the end will depend on what aspect of the lower court's decision is challenged": a legal conclusion, a factual finding, or an exercise of discretion. *Belot v. Burge*, 490 F.3d 201, 206 (2d Cir. 2007).

11

"If a district court denies equitable tolling on the belief that the decision was compelled by law," which is to say based on the conclusion "that the governing legal standards would not permit equitable tolling in the circumstances," then "that aspect of the decision [is] reviewed *de novo*." *Id*. Likewise, "if the decision to deny tolling was premised on a factual finding," then "the factual finding should be reviewed for clear error. *Id*. In general, district courts should "resolve the factual questions" relevant to the equitable tolling of a statute of limitations, such as those "surrounding a plaintiff's mental state." *Montin v. Est. of Johnson*, 636 F.3d 409, 414–15 (8th Cir. 2011). However, when resolving a factual question, courts must do so clearly. *See, e.g.*, *Clark v. Hanley*, No. 18-cv-1765 (JAM), 2021 WL 4192108, at *1 (D. Conn. Aug. 27, 2021) (electing to conduct an evidentiary hearing to find facts and "decide if [the plaintiff] can sustain her burden to establish grounds for equitable tolling"). And a district court generally should conduct an evidentiary hearing before making factual findings if a plaintiff's "sworn averments of fact, though disputed, meet the legal standards for equitable tolling." *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005).

In sum, before we review an equitable tolling decision for abuse of discretion or clear error, we must be convinced that the district court believed itself to be—and actually was—making findings of fact or exercising its equitable discretion.

## DISCUSSION

FTCA claims must be brought within two years of accrual. 28 U.S.C. § 2401(b). *Bivens* actions arising in Connecticut must be brought within three years, *see Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (holding that Conn. Gen. Stat. § 52-577 applies to claims under § 1983); *Chin v. Bowen*, 833 F.2d 21, 23 (2d Cir. 1987) ("*Bivens* actions are closely analogous to actions brought pursuant to section 1983 and therefore should be governed by the same statute of limitations."); *see also, e.g.*, *Bakowski v. Kurimai*, 387 F. App'x 10, 11 (2d Cir. 2003) (summary order) (applying *Lounsbury* and Conn. Gen. Stat. § 52-577 to *Bivens* claim). Assuming Rodriguez's abuse of Doe continued through the end of 2014, absent tolling, the statute of limitations on all her claims would have run by December 31, 2017. Under federal law, however, the accrual of FTCA and *Bivens*

13

claims may be subject to equitable tolling. *See United States v. Wong*, 575 U.S. 402, 412 (2015) (FTCA); *Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998) (*Bivens*).[2]

"Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). Granting equitable tolling is a discretionary "exercise of a court's equity powers." *Holland v. Florida*, 560 U.S. 631, 649 (2010). This discretion is not absolute. Before a court may exercise discretion to grant equitable tolling, a litigant must demonstrate as a factual matter the existence of two elements: first, "that some extraordinary circumstance stood in [her] way" and second "that [she] has been pursuing [her] rights diligently." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The law prohibits a judge from exercising her discretion where these two

---

[2] As the district court noted, it is unclear whether equitable tolling could apply to Doe's *Bivens* claim. *Doe*, 2022 WL 903368, at *4; *compare Gerena v. Korb*, 617 F.3d 197, 206 (2d Cir. 2010) (suggesting in dicta that equitable tolling does not apply to Conn. Gen. Stat. 52-577 because it is a statute of repose), *with Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (assuming that equitable tolling could apply to 52-577). Rodriguez has waived any argument that equitable tolling does not apply to Conn. Gen. Stat. 52-577, and we therefore need not consider this issue.

14

elements are missing. If they are found to be present, however, then a judge brings discretionary considerations to bear in deciding whether to permit equitable tolling.

In this case, the district court neither purported to find facts nor to exercise its discretion in concluding that Doe is not entitled to equitable tolling. Instead, the district court approached the issue of equitable tolling in the prototypical summary judgment posture, drawing legal conclusions based on purportedly undisputed facts regarding the prerequisite elements to the exercise of equitable tolling. It concluded as a matter of law that "no genuine issue of material fact exists as to whether plaintiff's claims are . . . subject to equitable tolling." *Doe*, 2022 WL 903368, at *10; *see also id.* at *2 (articulating the summary judgment standard); *id.* at *6 ("Construing the facts in favor of the non-moving party, as it must . . . ."); *id.* at *8–9 (referring to "the undisputed evidence" and Doe's failure to "produce[] evidence to support a finding that she acted with diligence"). We hold that this was an error because a reasonable district court acting in a fact-finding capacity

15

could determine that the prerequisites to equitable tolling—extraordinary circumstances and reasonable diligence—are present on this record.

*First*, the district court could reasonably conclude that an extraordinary circumstance stood in Doe's way of commencing this case sooner. Whether a plaintiff faced extraordinary circumstances depends not on "the uniqueness of a party's circumstances" or the outrageousness of what they endured, "but rather . . . the severity of the obstacle impeding compliance with a limitations period." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021) (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)). "Among the extraordinary reasons that may justify equitable tolling of a statute of limitations is a defendant's efforts to threaten or retaliate against a plaintiff if she files a claim against him." *Clark v. Hanley*, No. 18-cv-1765 (JAM), 2022 WL 124298, at *4 (D. Conn. Jan. 13, 2022). For example, courts in this Circuit have found that a prisoner "may show extraordinary circumstances for purposes of equitable tolling where they allege specific facts showing that a reasonable fear of retaliation" by their jailers "prevented them from filing a timely complaint." *Davis v. Jackson*, No. 15-cv-5359 (KMK), 2016 WL 5720811, at *11

(S.D.N.Y. Sept. 30, 2016); *see also Stone #1 v. Annucci*, No. 20-cv-1326 (RA), 2021 WL 4463033, at \*12 (S.D.N.Y. Sept. 28, 2021); *Noguera v. Hasty*, No. 99-cv-8786 (KMW), 2001 WL 243535, at \*6 (S.D.N.Y. Mar. 12, 2001).  Likewise, several courts have recognized that the psychological impact of long-term or extreme sexual abuse can constitute an extraordinary circumstance that prevents a victim from coming forward even for some time after the abuse has ceased.  *See, e.g.*, *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999); *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 251–52 (D.D.C. 2018).

As the foregoing precedent demonstrates, the effect of a threat can depend on factors including the nature of the threat and the relative power of its source and its target.  Sexual abuse perpetrated by an ICE agent against an undocumented immigrant may give the assailant's threats a similarly immobilizing effect as those of a prison official against someone in their custody.  With these dynamics in mind, the district court could reasonably find on this record that years of violent sexual abuse and threats to Doe's life gave Doe a "specific and credible basis to fear retaliation" from Rodriguez and thereby constituted an extraordinary

17

circumstance. *Stone #1*, 2021 WL 4463033, at \*12. Doe testified that Rodriguez violently raped her on a regular basis for a period of seven years, scarred her with acts of physical violence, treated her like his "slave," and threatened to further harm and even kill her. Three times during the course of Rodriguez's abuse, Doe attempted suicide, and three times she terminated a pregnancy caused by his rapes. And even if these circumstances alone were not enough to impede Doe from coming forward, there was also the fact that Doe was an undocumented immigrant while Rodriguez was a government official with the power to hasten the deportation of her and her family members.

Nor does the fact that Rodriguez left ICE and stopped raping and contacting Doe in 2014 foreclose a conclusion that Rodriguez's power over Doe continued to be so severe as to prevent her from pursuing her claim. Shortly after the last time he allegedly raped her, Rodriguez told Doe that he would kill her if she spoke—a threat made real by the extensive violence Rodriguez had shown himself to be capable of and his intimate knowledge of Doe's life. The district court could therefore reasonably conclude from Doe's testimony that an extraordinary

18

circumstance continued to stand in Doe's way even after Rodriguez and Doe were no longer in communication.

Despite not purporting to act in a fact-finding capacity, the district court implicitly rejected the inference of ongoing fear because Doe was ultimately able to talk about her experience once her father was facing deportation. *Doe*, 2022 WL 903368, at *8–9. But rejecting this inference would have required the district court to make an express factual determination. That is because the record also permits the factual conclusion that Doe's fear for her father's safety overcame her fear for herself and thereby allowed her to come forward when she did. A plaintiff's eventual willingness to come forward despite an ongoing fear of retaliation does not necessarily preclude a showing that the fear of retaliation constituted an extraordinary circumstance. If that were so, then plaintiffs with untimely claims would never be able to seek equitable tolling unless and until the threat fully dissipated. As she tells it, Doe was stuck choosing between the devil and the deep blue sea—one course risking her life, the other risking her father's. In this light, we cannot say that a reasonable district court judge engaging in fact-finding could

19

only conclude that Doe's fear of retaliation was illusory or surmountable all along simply because she eventually managed to tell her story when circumstances changed.

*Second*, the district court could reasonably find that Doe exercised reasonable diligence in pursuing her claim as soon as she was able to. The extraordinary nature of the abuse Doe suffered does not absolve her of the independent requirement to show that she has been pursuing her rights diligently. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255–56 (2016). At the same time, in analyzing the reasonable diligence prong, the Supreme Court has cautioned against the application of "an overly rigid . . . approach." *Holland*, 560 U.S. at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* (cleaned up). What could reasonably be expected from a plaintiff depends, of course, on the nature of the circumstances that she faces.

This is not a case where the plaintiff failed to exercise diligence "without any valid justification." *Pace*, 544 U.S. at 419. Rather, as discussed above, the

district court could reasonably determine that the fear and psychological impact caused by Rodriguez's assaults prevented Doe from being able to begin seeking redress for several years after the abuse ended, but that as soon as she was able to, she began taking steps to vindicate her rights, such as retaining counsel and filing administrative claims with the relevant agencies. Again, we cannot say that no district court acting as factfinder could reasonably find that Doe acted "as diligently as reasonably could have been expected *under the circumstances*." *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003) (emphasis in original).

\* \* \*

In this case, the district court denied equitable tolling as a matter of law, purporting to draw every inference in favor of Doe. We vacate its judgment because the record *allows* for a finding that Doe faced extraordinary circumstances and acted with reasonable diligence. On remand, the district court should act in a fact-finding capacity and determine whether Doe has demonstrated extraordinary circumstances and reasonable diligence. If the court determines that she has

21

established these prerequisites for equitable tolling, then it should engage in the discretionary determination of whether to grant her request for equitable tolling.

## CONCLUSION

For the foregoing reasons, the judgment of the United States District Court for the District of Connecticut dismissing the complaint is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Opinion.