RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0168p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

RICHARD WERSHE, JR.,

                   *Plaintiff-Appellant*,

     *v.*

CITY OF DETROIT, MICHIGAN; WILLIAM JASPER; KEVIN GREENE; HERMAN GROMAN; UNKNOWN FORMER ASSISTANT UNITED STATES ATTORNEY; CAROL DIXON, as representative of the estate of James Dixon; EDWARD JAMES KING; LYNN HELLAND,

                   *Defendants-Appellees*.

No. 23-1902

RICHARD WERSHE, JR.,

                   *Plaintiff-Appellant*,

     *v.*

UNITED STATES OF AMERICA,

                   *Defendants-Appellees*.

No. 23-1903

Appeals from the United States District Court for the Eastern District of Michigan at Flint.
Nos. 4:21-cv-11686; 4:22-cv-12596—F. Kay Behm, District Judge.

Argued: July 18, 2024

Decided and Filed: August 8, 2024

Before: CLAY, McKEAGUE, and READLER, Circuit Judges.

**COUNSEL**

---

Case No. 23-1902

**ARGUED:** Nabih H. Ayad, AYAD LAW, PLLC, Detroit, Michigan, for Appellant. John G. Adam, LAW OFFICE OF JOHN G. ADAM, PLLC, Berkley, Michigan, for Appellees Dixon, Groman, Helland, and King. Cheryl L. Ronk, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellees Jasper, Green, and City of Detroit. **ON BRIEF:** Nabih H. Ayad, AYAD LAW, PLLC, Detroit, Michigan, for Appellant. John G. Adam, LAW OFFICE OF JOHN G. ADAM, PLLC, Berkley, Michigan, Stuart M. Israel, STUART M. ISRAEL, PLLC, Farmington Hills, Michigan, for Appellees Dixon, Groman, Helland, and King. Cheryl L. Ronk, Gregory B. Paddison, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellees Jasper, Green, and City of Detroit.

---

Case No. 23-1903

**ARGUED:** Nabih H. Ayad, AYAD LAW, PLLC, Detroit, Michigan, for Appellant. Jennifer L. Newby, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Nabih H. Ayad, AYAD LAW, PLLC, Detroit, Michigan, for Appellant. Jennifer L. Newby, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

---

**OPINION**

---

CLAY, Circuit Judge. Plaintiff Richard Wershe, Jr., appeals the district court's dismissal of his complaints in two lawsuits pursuant to Federal Rule of Civil Procedure 12(b)(6). On July 20, 2021, Wershe sued the City of Detroit and federal and state law enforcement officials for violations of his constitutional rights under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Based on the same underlying facts, on October 28, 2022, Wershe also sued the United States for violations of the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* In a consolidated order, the district court dismissed Wershe's complaints with prejudice because Wershe's claims were time-barred. For the reasons set forth below, we **AFFIRM** the district court's order.

## I.  BACKGROUND

### A.  Factual Background

We draw the following facts from Wershe's complaints and take them to be true at the motion to dismiss stage.  *See Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).

In 1984, when Wershe was fourteen years old, his father contacted the Federal Bureau of Investigation ("FBI") about a known drug dealer who had begun dating Wershe's sister.  FBI Agent James Dixon met with Wershe's father about the dealer, and Wershe's father brought Wershe along.  At the meeting, Dixon showed Wershe and his father photographs of neighborhood individuals who were of interest to the FBI, and Wershe was able to identify most of them.

Based on Wershe's ability to identify neighborhood individuals of interest to the FBI, Dixon began using fourteen-year-old Wershe as a drug informant for a joint task force between the FBI and the Detroit Police Department.  To solicit information from Wershe, FBI agents would show up unannounced while Wershe walked to school, to his home, and to other locations, sometimes several times a week or daily.  Because Wershe was a juvenile and afraid of law enforcement, he felt he could not refuse.  Over the following year, Wershe's involvement with the task force deepened.  Federal and state officers, including Defendants Groman, Jasper, and Greene, instructed Wershe to buy and sell drugs, at one point sending him to another state with thousands of dollars to do so.

Wershe's work as a juvenile drug informant placed him in very dangerous situations.  As a fourteen- and fifteen-year-old, Wershe was put in proximity to drug trafficking gangs and, by the age of seventeen, experienced multiple attempted shootings.  In November 1984, someone shot and nearly killed Wershe, requiring him to be hospitalized and causing injuries to his large intestine.  After using Wershe as an informant for a couple of years, Defendants Groman, Jasper, and Greene then cut off contact with him.  By 1987, Wershe no longer worked as an informant.

On May 22, 1987, Wershe was arrested after officers received a tip connecting Wershe to a large box of cocaine.  Subsequently, Wershe was convicted by a jury of possession with intent

to distribute 650 grams or more of cocaine, in violation of Michigan Compiled Laws § 333.7401(2)(a)(i) (amended 2002). *See People v. Wershe*, No. 107785, at 1 (Mich. Ct. App. Apr. 30, 1990). For this conviction, Wershe—then seventeen years old—received the statutorily mandated sentence of life imprisonment without parole, *see* Mich. Comp. Laws § 333.7401 (1978), although he later became parole eligible based on changes to state law, *see* Act to Amend 1953 PA 232, Pub. L. No. 314, Mich. Comp. Laws § 791.234 (1998) (amending Michigan's drug laws to establish parole eligibility for individuals who had been sentenced to life imprisonment without parole).

While Wershe was incarcerated, law enforcement approached him multiple times about cooperating with ongoing investigations. In 1991, Defendants Groman and Helland approached Wershe to participate in "Operation Backbone," an investigation into corruption within the Detroit Police Department and among Detroit politicians. Because Defendant Helland stated that he and Defendant Groman would do everything in their power to get Wershe released if he cooperated, Wershe agreed to participate. After Operation Backbone resulted in the arrest of multiple Detroit police officers and public officials, Defendant Helland arranged for Wershe to be placed in a witness protection program while incarcerated. Through this program, Wershe was relocated within the state prison system and received a fake identity.

In 1992, Wershe was again approached by law enforcement officials, including Defendant King, this time to testify before a grand jury against the "Best Friends" gang. Wershe ultimately agreed to participate based on King's promises that Wershe's grand jury testimony would remain sealed and on the condition that King would do everything in his power to get Wershe's sentence commuted.

Wershe became eligible for parole in 2002, and his parole hearing was scheduled for March 2003. Ahead of Wershe's parole hearing, Defendant Helland informed Wershe that neither he nor Defendant King could advocate for Wershe's parole because their office did not support Wershe's release. Wershe was denied parole at the 2003 hearing. At the hearing, Wershe observed law enforcement officers reading from his grand jury testimony regarding the Best Friends gang, contrary to his belief that his testimony would remain sealed.

In 2017, Wershe was ultimately granted parole by the Michigan Parole Board. Thereafter, Wershe was immediately transferred to a Florida prison to serve a sentence for an unrelated racketeering charge. Wershe was released from prison on July 20, 2020.

### B.  Procedural History

Based on the above facts, Wershe brought two lawsuits. On July 20, 2021, Wershe brought his first lawsuit, in which he sued: (1) the City of Detroit, (2) two former Detroit police officers (William Jasper and Kevin Greene), (3) two former FBI agents (Herman Groman and the Estate of James Dixon, via its representative Carol Dixon), and (4) several former assistant U.S. attorneys (Lynn Helland, Edward James King, and Unknown Former Assistant U.S. Attorney). Wershe sued the City of Detroit and the former municipal officials (the "City Defendants") under 42 U.S.C. § 1983, and he sued the former federal officials (the "individual federal Defendants") under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, which recognizes a cause of action for damages against federal officials. *See* 403 U.S. at 389.

Wershe alleged that while he was a juvenile informant in the 1980s, the former police officers and FBI agents violated his Fifth Amendment substantive due process rights, his Fourth Amendment right to be free from government seizures, and his First Amendment right to family integrity.[1] He also asserted that the former assistant U.S. attorneys had violated and conspired to violate his Fifth Amendment due process rights by allegedly circulating his sealed grand jury testimony ahead of his 2003 parole hearing. Wershe additionally claimed that several Defendants breached a promise to advocate for him at his 2003 parole hearing, in violation of his Fifth Amendment due process rights. Finally, Wershe alleged that the City of Detroit was liable for its police department's conduct based on *Monell* liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

---

[1]Although Wershe's complaint alleges violations of his due process rights under the Fifth Amendment, his claims against the City Defendants fall under the Fourteenth Amendment's Due Process Clause. *See Scott v. Clay County*, 205 F.3d 867, 873 n.8 (6th Cir. 2000).

On October 28, 2022, Wershe brought a second lawsuit, in which he sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Wershe alleged that the United States was liable for the conduct of the individual federal Defendants named in the first lawsuit, which he claimed had resulted in the torts of negligence or wanton misconduct, intentional infliction of emotional distress, fraud or negligent misrepresentation, and civil conspiracy.

Defendants in both lawsuits moved to dismiss. Thereafter, the district court issued a consolidated order in which it granted Defendants' motions to dismiss in both lawsuits and dismissed Wershe's claims with prejudice. The district court reasoned that dismissal was appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6) because Wershe's claims plainly fell outside of the applicable statutes of limitations and Wershe was not entitled to equitable tolling. Wershe then timely appealed the district court's order.

## II. DISCUSSION

Our legal system recognizes time limits on a party's ability to bring claims. These time limits, reflected in statutes of limitations, serve a number of purposes. They prevent parties from bringing claims long after the "evidence has been lost, memories have faded, and witnesses have disappeared." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (quoting *Ord. of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 349 (1944)). They bring "security and stability to human affairs" by disallowing the revival of claims in perpetuity. *Gabelli v. SEC*, 568 U.S. 442, 448–49 (2013) (quoting *Wood v. Carpenter*, 101 U.S. 135, 139 (1879)). Whether a plaintiff has a just claim or not, in light of the above considerations, "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Ord. of R.R. Telegraphers*, 321 U.S. at 349.

Despite their value, the time limits imposed by statutes of limitations may on occasion be too mechanical and unforgiving. *See Holland v. Florida*, 560 U.S. 631, 650 (2010). For that reason, the doctrine of equitable tolling permits a court to pause the statute of limitations when some significant impediment beyond the plaintiff's control prevented the plaintiff from filing a timely action. *See Waldburger*, 573 U.S. at 9. In other words, much of the focus of equitable

tolling is the impediment to filing. Thus, the equitable tolling inquiry turns "not on the uniqueness of a party's circumstances or the outrageousness of what they endured," but instead on "the severity of the obstacle impeding compliance with a limitations period." *Doe v. United States*, 76 F.4th 64, 72 (2d Cir. 2023) (internal quotation marks and citation omitted).

These principles are implicated in the case before us today. The district court dismissed Wershe's claims as time-barred. In response, Wershe argues that his limitations periods should have been equitably tolled. He also takes issue with the district court's dismissal of his claims with prejudice, rather than without prejudice, and with the district court's treatment of materials outside the pleadings. Without reaching the merits of Wershe's case, we conclude that the district court correctly disposed of Wershe's claims.

## A. Statute of Limitations

Defendants argue that Wershe's claims are barred by the statutes of limitations. Although the statute of limitations is an affirmative defense that a plaintiff ordinarily need not plead to state a claim, dismissal of the plaintiff's claim is appropriate when "the allegations in the complaint affirmatively show that the claim is time-barred." *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 86 F.4th 1168, 1178 (6th Cir. 2023) (citation omitted). We review the issue of whether a limitations period has expired *de novo*. *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 374 (6th Cir. 2015).

Wershe's complaints make clear that both his lawsuit under the FTCA and his lawsuit under § 1983 and *Bivens* were untimely. The FTCA requires plaintiffs to file administrative claims with the government "within two years" after the claims accrued and to commence any legal action "within six months" after the government denies these administrative claims. *See* 28 U.S.C. § 2401(b). Wershe's most recent FTCA claims accrued when he was denied parole shortly after his March 2003 parole hearing, at which Defendants allegedly committed torts. *See Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009) (stating that tort claims under the FTCA generally accrue when the plaintiff is injured). With respect to his most recent FTCA claims, Wershe was therefore required to bring administrative claims shortly after March 2005. *See* 28 U.S.C. § 2401(b). However, Wershe did not file his administrative claims until July

2021, long after the expiration of the FTCA's two-year limitations period. And many of Wershe's FTCA claims date even further back because they relate to torts allegedly committed while Wershe was a juvenile informant from 1984 to 1986.

Likewise, the limitations period for Wershe's § 1983 and *Bivens* claims expired before Wershe sued the City Defendants and individual federal Defendants. Section 1983 and *Bivens* claims lack express statutes of limitations, and instead "borrow the personal-injury statute of limitations from the state in which the claim arose." *Zappone v. United States*, 870 F.3d 551, 559 (6th Cir. 2017). Because Wershe's § 1983 and *Bivens* claims arose in Michigan, they are subject to Michigan's three-year statute of limitations for personal-injury claims. *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020) (citing Mich. Comp. Laws § 600.5805(2)). Wershe's most recent § 1983 and *Bivens* claims are due process claims related to his March 2003 parole hearing. These claims accrued at the time of the parole hearing or at the latest when Wershe was denied parole. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1010–11 (6th Cir. 2022) (observing that the accrual date for due process claims turns on several considerations and that some due process claims accrue before any adverse consequences flow from the due process violation); *see also Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (noting that § 1983 claims accrue when a plaintiff knew or should have known of an injury); *Friedman v. Est. of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (same for *Bivens*). Wershe was therefore required to bring his most recent § 1983 and *Bivens* claims in March 2006 or shortly thereafter, three years from the date of the March 2003 parole hearing or the denial of his parole, but he filed his lawsuit under § 1983 and *Bivens* on July 20, 2021. His earlier claims date back to the 1980s, and those claims are therefore even more untimely.

## B. Equitable Tolling

Wershe does not dispute that his claims fall outside of the applicable statutes of limitations. However, he argues that the district court erred by not equitably tolling his limitations periods. We review a denial of equitable tolling *de novo* when the underlying facts are undisputed and for abuse of discretion when there is a factual dispute. *Robertson v. Simpson*,

624 F.3d 781, 784 (6th Cir. 2010).  Because we assume Wershe's facts to be true at the motion to dismiss stage, "there are no factual disputes" and *de novo* review applies to the issue of equitable tolling in this case.  *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001).

An equitable tolling analysis generally proceeds in two steps.  A court must first determine whether it has authority to equitably toll a particular statute of limitations.  When interpreting federal limitations periods, the authority to equitably toll typically exists if the limitations period is not jurisdictional.  *See Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203, 209 (2022); *see also Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990).  Wershe's limitations period with respect to his FTCA claims does not implicate this Court's jurisdiction and is therefore subject to equitable tolling.  *See United States v. Wong*, 575 U.S. 402, 420 (2015).  State law presumptively governs the tolling of Wershe's § 1983 claims against the City Defendants and his *Bivens* claims against the individual federal Defendants, so the availability of tolling for those claims will ordinarily depend on the contours of state law.  *See Bishop v. Child.'s Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010).  If equitable tolling is available, the court must next decide whether equitable tolling is warranted based on the governing tolling rules for each claim, as discussed in greater detail for Wershe's claims below.

## 1.  FTCA Claims

This Circuit has traditionally considered five factors to determine whether equitable tolling of an FTCA claim is warranted:  whether the plaintiff (1) lacked notice of the filing requirement, (2) lacked constructive knowledge of the filing requirement, (3) diligently pursued his rights, (4) would prejudice the defendant in pursuing the claim, and (5) reasonably ignored the filing requirement.[2]  *Zappone*, 870 F.3d at 556.  Although these factors are not exhaustive,

---

[2]As the district court observed, the Supreme Court has applied a different, two-element equitable tolling test to habeas cases.  *See Holland*, 560 U.S. at 649.  That test equitably tolls a habeas petitioner's claims when the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Id.* (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  However, our Circuit continues to apply the above five-factor equitable tolling test to FTCA claims and other civil claims "[b]ecause the Supreme Court has never expressly adopted the *Holland* test outside of the habeas context."  *Zappone*, 870 F.3d at 557; *see also Menominee Indian Tribe v. United States*, 577 U.S. 250, 257 n.2 (2016)

and not all the factors may be applicable in every case, they serve as useful guideposts for our analysis. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). We therefore consider each factor in turn.

### a. Actual Notice and Constructive Knowledge

The first and second equitable tolling factors look to whether Wershe had (1) actual notice or (2) constructive knowledge of the filing deadlines. *Zappone*, 870 F.3d at 556. The existence of a publicly available statute setting forth a filing deadline at the very least establishes constructive knowledge. *See Athens Cellular, Inc. v. Oconee County*, 886 F.3d 1094, 1101 (11th Cir. 2018); *see also Atkins v. Parker*, 472 U.S. 115, 130 (1985). Likewise, a plaintiff has constructive knowledge when his attorney should have known of the filing deadlines. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).

These factors weigh against Wershe. The FTCA contains an express statute of limitations provision, which plainly provides notice of the Act's limitations period. *See* 28 U.S.C. § 2401(b). Because the limitations period for an FTCA claim is publicly available, and Wershe's attorneys should have known of it, Wershe was at the very least on constructive notice of his FTCA filing deadlines.

Wershe argues that two attorneys he retained—William Bufalino and Ralph Musilli— mistakenly believed that he would have one year after his release from prison to file claims. According to Wershe, that advice was based on a former Michigan law that tolled a plaintiff's limitations period while the plaintiff was incarcerated. *See* Mich. Comp. Laws § 600.5851(1) (1961) (amended 1993). Even assuming that Michigan law is relevant to the tolling of Wershe's FTCA claims, *but see Zappone*, 870 F.3d at 556–57 (applying federal law to the tolling of FTCA claims), Michigan law abolished incarceration as a ground for tolling in 1993, effective April 1, 1994, and impacted individuals were directed to bring suit by April 1, 1995. *See* Mich. Comp. Laws § 600.5851(9) (1993). At best, the legal advice Wershe received would have been mistaken after April 1, 1995.

---

("[W]e have never held that [*Holland*'s] equitable-tolling test necessarily applies outside the habeas context."). Regardless, applying the *Holland* test to Wershe's claims would not change the outcome of his case.

However, an attorney's mistake is typically not grounds for equitable tolling.  *See Jurado v. Burt*, 337 F.3d 638, 644–45 (6th Cir. 2003); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007).  That is because the lawyer acts as "the agent of his client," and the client therefore "must bear the risk of attorney error."  *United States v. Wright*, 945 F.3d 677, 684 (2d Cir. 2019) (citation omitted); *accord Damren v. Florida*, 776 F.3d 816, 821 (11th Cir. 2015) (per curiam).  And the proper remedy for attorney error "is generally a legal malpractice suit or an ineffective assistance of counsel claim," not equitable tolling.  *Jurado*, 337 F.3d at 644–45 (citations omitted).

Courts have recognized an exception to the general rule that an attorney error does not warrant equitable tolling, but that exception does not apply here.  When attorney misconduct is extraordinary, as opposed to merely a form of "garden variety" negligence, equitable tolling may be warranted.  *Holland*, 560 U.S. at 651–52.  For example, a plaintiff might qualify for equitable tolling when his attorney repeatedly ignores his communications, *id.* at 652, refuses the plaintiff's instructions to submit filings, or never speaks or meets with the plaintiff, *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003).  However, Wershe does not plausibly allege any such extraordinary attorney conduct here.  Instead, an attorney's "be[ing] unaware of the date on which the limitations period expired . . . suggest[s] simple negligence."  *Holland*, 560 U.S. at 652.  While it is possible that Wershe's attorneys were negligent, any such attorney negligence is not grounds for equitable tolling.  *See id.*  Because Wershe's attorneys should have known of his limitations periods, he had at least constructive knowledge of his filing deadlines. *See Rose*, 945 F.2d at 1335.

### b.  Diligence

The next factor looks to whether Wershe diligently pursued the claims he now brings. *Zappone*, 870 F.3d at 556.  A plaintiff must have diligently pursued the instant claims during the entire period over which he seeks equitable tolling.  *See, e.g.*, *Medina v. Whitaker*, 913 F.3d 263, 267 (1st Cir. 2019); *Rashid v. Mukasey*, 533 F.3d 127, 132 (2d Cir. 2008); *Alzaarir v. Att'y Gen. of U.S.*, 639 F.3d 86, 90 (3d Cir. 2011) (per curiam).  That means the plaintiff must have pursued

his claims with "some regularity" during that period, "as permitted by his circumstances." *Smith v. Davis*, 953 F.3d 582, 601 (9th Cir. 2020) (en banc).

Consulting with legal professionals about bringing claims can certainly contribute to a plaintiff's diligence. *See Gordillo v. Holder*, 640 F.3d 700, 705 (6th Cir. 2011) (concluding that litigants diligently pursued their claims when three lawyers, a fourth legal professional, and an immigration judge told the litigants that they lacked available relief). However, the mere fact that Wershe consulted with two attorneys about his claims does not establish his diligence over the multiple decades during which he failed to bring suit.

First, Wershe admits that in 2004 he asked his then-attorney about pursuing legal action against Defendants. However, he chose not to bring suit because "there was a real possibility of him being released on parole." No. 4:22-cv-12596, Compl., R. 1, Page ID #22. Wershe therefore discussed his potential claims with an attorney and made a decision to await his parole determination. His decision to delay his lawsuits based on the possibility of parole is not the type of extraordinary circumstance that ordinarily warrants equitable tolling. *See Waldburger*, 573 U.S. at 9.

Wershe also argues that while he was in prison, he feared Defendants would retaliate against him for bringing claims, and that this excuses his delay. Some courts have recognized that a defendant's "specific and credible" threats of retaliation against a prisoner can support equitable tolling. *See, e.g.*, *Doe*, 76 F.4th at 72. As applied to our Circuit's equitable tolling test, a defendant's threats of retaliation sensibly bear on whether a plaintiff was diligent "as permitted by his circumstances," because a plaintiff's circumstances may be affected by such threats. *See Smith*, 953 F.3d at 601. And our Circuit has already acknowledged that retaliation and intimidation can excuse the failure to satisfy other requirements, such as the exhaustion requirement under the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et seq*. *See Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014) (per curiam).

However, while Wershe alleges he feared retaliation by other parties for other conduct, he does not allege facts that plausibly suggest that Defendants ever threatened to retaliate as a result of him bringing suit. *See Doe*, 76 F.4th at 72. For example, Wershe asserts that while

incarcerated, he participated in the "Operation Backbone" investigation into political corruption and police corruption in Detroit. As a result of his participation, Wershe was placed in a witness protection program, through which he was given a fake identity and was relocated. While Wershe may have feared retaliation from individuals targeted by Operation Backbone, these allegations do not establish any threats of retaliation by Defendants at all, let alone threats targeted at Wershe bringing suit. In fact, it was Defendant Helland, a former assistant U.S. attorney, who arranged for Wershe's placement in the witness protection program, ostensibly to protect Wershe from any retaliation. Wershe also claims that after he testified before a grand jury against the Best Friends gang, unknown officers circulated his grand jury testimony ahead of his parole hearing. But Wershe fails to demonstrate how this example points to Defendants or is connected to Wershe bringing claims.

Many of Wershe's other allegations amount to a sweeping fear that someone in the justice system would retaliate against him for bringing any legal action. However, such a generalized fear of retaliation is insufficient to warrant equitable tolling. *See id.*; *Huff v. Neal*, 555 F. App'x 289, 296 (5th Cir. 2014) (per curiam); *Davis v. Jackson*, No. 15-CV-5359, 2016 WL 5720811, at *11 (S.D.N.Y. Sept. 30, 2016). Otherwise, any untimely plaintiff who asserted that he was generally fearful of bringing claims would be entitled to equitable tolling. For example, Wershe states that he "was terrified of his captors," No. 4:22-cv-12596, Compl., R. 1, Page ID #15, but such a conclusory allegation "will not suffice" at the motion to dismiss stage, *see Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). He adds that two of his attorneys advised him to forego all legal action for fear of retaliation. However, this does little to establish specific threats of retaliation by Defendants and to turn Wershe's generalized fear of retaliation into a more concrete one.

Furthermore, Wershe's fear of retaliation is made less plausible by the fact that he pursued other legal actions while he was incarcerated, including a suit against members of his parole board. *See Wershe v. Combs*, No. 1:12-CV-1375, 2016 WL 1253036, at *1 (W.D. Mich. Mar. 31, 2016). He also appealed his conviction and sentence and thereafter sought post-conviction relief multiple times. *People v. Wershe*, No. 107785 (Mich. Ct. App. Apr. 30, 1990) (direct appeal); *People v. Wershe*, No. 87-04902 (Mich. Cir. Ct. Apr. 1, 2003) (motion for relief

from judgment); *People v. Wershe*, No. 329110 (Mich. Ct. App. Sept. 29, 2015) (motion for relief from judgment). Insofar as Wershe feared retaliation by anyone in the justice system, it did not prevent him from pursuing these actions, and such actions demonstrate that Wershe had some access to the legal system.

Lastly, Wershe claims that he was diligent because he filed his claims the day before his probation ended. Yet, by this point, Wershe had been released from prison for a year. More importantly, Wershe was required to diligently pursue the instant claims during the full period that he seeks to equitably toll. *See, e.g.*, *Medina*, 913 F.3d at 267. The fact that Wershe brought his claims a year after his release cannot establish his diligence during the multiple decades for which he seeks equitable tolling. *Cf. Capiz-Fabian v. Barr*, 933 F.3d 1015, 1018 (8th Cir. 2019) ("Large time lapses are a significant obstacle to establishing one has diligently pursued his rights.").

### c. Prejudice to Defendants

The fourth equitable tolling factor considers whether Defendants would be prejudiced by equitable tolling. *Zappone*, 870 F.3d at 556. This factor weighs strongly against Wershe. Wershe asks this Court to equitably toll his claims not for some small period of time but for decades. Defendants would be prejudiced by such a result. Defendants note that many of the relevant documents would be nearly impossible to locate, that events would be difficult to recall, and that a significant number of would-be witnesses are now dead. *See Cleveland Newspaper Guild, Loc. 1 v. Plain Dealer Publ'g Co.*, 839 F.2d 1147, 1154 (6th Cir. 1988) (en banc) (observing that a delay in filing a claim may prejudice a defendant if the delay results in the loss of potential witnesses and evidence). For example, they observe that all of the following have passed away: (1) FBI Agent James Dixon, whom Wershe sues through a representative of Dixon's estate, (2) the two attorneys who allegedly advised Wershe of his statute of limitations, (3) a Detroit police commander who allegedly ordered someone to kill Wershe, and (4) former Detroit mayor Coleman Young, who Wershe's appellate briefing claims endangered Wershe.

In fact, Wershe concedes that virtually all relevant documents would be unavailable. He observes that "no direct documentary evidence" exists in this case, that any trial "would be

almost purely testimonial," and that the witnesses would be "Plaintiff and Defendants." *See* No. 23-1903, Appellant's Br. at 47. Nonetheless, because he has the burden of proof, he argues that this would prejudice him more than it would prejudice Defendants. Even assuming that is true, the fact that all the parties would face nearly insurmountable litigation obstacles is of little help to Wershe. The potential prejudice to Defendants is that they might be forced to litigate on Wershe's terms without the help of any documentary evidence that could call his testimony into question. And the extremely limited ability to litigate this case only illustrates that, after so many years, his lawsuits may not be a suitable vehicle for the legal system's function of discerning the truth.

### d.  Reasonableness

The final factor asks whether Wershe's ignorance of his filing deadlines was reasonable. *Zappone*, 870 F.3d at 556. This factor, which overlaps with some of the prior factors, weighs against Wershe. Insofar as Wershe ignored the filing deadlines because of attorney error, attorney error typically is not grounds for equitable tolling. *Jurado*, 337 F.3d at 644–45. And insofar as Wershe ignored the filing deadlines because of threats of retaliation, as discussed above, his allegations do not plausibly demonstrate that Defendants threatened to retaliate or would have retaliated against him. While Wershe's circumstances are undoubtedly unique, and he alleges a number of concerning facts, his ignorance of the filing deadlines for nearly twenty years for some claims and thirty to forty years for others was not reasonable.

Wershe argues that a jury, not the district court, should have decided whether his ignorance of the filing deadlines was reasonable. At the least, Wershe adds, he was entitled to an evidentiary hearing. However, "[t]he decision to invoke equitable tolling is a question of law for a court to answer," rather than for a jury. *Zappone*, 870 F.3d at 562. And Wershe never sought an evidentiary hearing below. The district court properly addressed the fifth factor of this Circuit's equitable tolling analysis. As the above five factors show, equitable tolling is not warranted for Wershe's FTCA claims.

## 2. Section 1983 and *Bivens* Claims

Michigan law presumptively governs the tolling of Wershe's § 1983 and *Bivens* claims. *See Bishop*, 618 F.3d at 537. Just as with our Circuit's five-factor test, however, Wershe is not entitled to equitable tolling under Michigan law.

Section 1983 and *Bivens* claims borrow their statutes of limitations from state law. *Zappone*, 870 F.3d at 559. And ordinarily, "[w]hen the statute of limitations is borrowed from state law, so too are the state's tolling provisions, except when they are 'inconsistent with the federal policy underlying the cause of action under consideration.'" *Bishop*, 618 F.3d at 537 (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980)). Although past cases have typically applied this principle to other state grounds for tolling, *see id.* at 537–38 (involving a state statute's tolling of a limitations period while the plaintiff was a minor); *Tomanio*, 446 U.S. at 485–87 (looking to state tolling provisions to determine whether a limitations period could be tolled while the plaintiff pursued a related cause of action), our Circuit has held in multiple unpublished cases that a state's equitable tolling principles likewise govern § 1983 claims. *See, e.g.*, *Roberson v. Macnicol*, 698 F. App'x 248, 250 (6th Cir. 2017) (considering the possibility of applying Michigan equitable tolling rules); *Helm v. Ratterman*, 778 F. App'x 359, 369 (6th Cir. 2019) (applying Kentucky's equitable tolling statute). *But cf. Martin v. Somerset County*, 86 F.4th 938, 944–45 (1st Cir. 2023) (identifying as an open question in the First Circuit whether state or federal law governs the equitable tolling of § 1983 claims). Because *Bivens* claims, like § 1983 claims, borrow state statutes of limitations, the rationale for applying state equitable tolling principles to § 1983 claims applies to *Bivens* claims as well.

Turning to Michigan's tolling rules, Wershe has not satisfied his burden of pointing to any Michigan law that persuades us to toll his § 1983 and *Bivens* claims; nor is such law apparent. *See Robertson*, 624 F.3d at 784. Wershe does not argue, nor does he appear to qualify, for any of Michigan's statutory grounds for tolling.[3] *See, e.g.*, Mich. Comp. Laws § 600.5855

---

[3]Wershe previously would have qualified for two of Michigan's statutory grounds for tolling, but neither applies now. First, Michigan law formerly would have tolled Wershe's claims while he was incarcerated, but that ground was repealed in 1993, effective April 1, 1994. *See* Mich. Comp. Laws § 600.5851(1) (1961) (amended 1993). Second, when a limitations period expires while the plaintiff is a minor, Michigan law affords the minor a

(tolling the limitations period where the defendant fraudulently conceals a claim); *id.* § 600.5854 (tolling the limitations period where the plaintiff is unable to bring suit due to war); *id.* § 600.5856(a) (tolling the limitations period where the complaint is filed but not yet served). And under Michigan law, an express statute of limitations ordinarily cannot be equitably tolled. *See Secura Ins. Co. v. Auto-Owners Ins. Co.*, 605 N.W.2d 308, 311 (Mich. 2000) (per curiam). Because Wershe's § 1983 and *Bivens* claims are governed by Michigan's express three-year statute of limitations for personal-injury claims, Mich. Comp. Laws § 600.5805(2), equitable tolling appears to be unavailable under Michigan law.

We need not decide if Michigan's tolling rules are "inconsistent with the federal policy underlying [§ 1983 and *Bivens*]" and thus require the application of federal equitable tolling rules. *See Bishop*, 618 F.3d at 537 (quoting *Tomanio*, 446 U.S. at 485); *see, e.g.*, *Battle v. Ledford*, 912 F.3d 708, 715 (4th Cir. 2019). Wershe has not made that argument on appeal. And even if federal equitable tolling principles governed Wershe's § 1983 and *Bivens* claims, we have already concluded that Wershe is not entitled to equitable tolling under federal law. *See supra* Section II.B.1.

Under both this Circuit's five-factor test and under Michigan law, Wershe cannot avail himself of equitable tolling, and his claims are therefore time-barred. We thus need not consider several additional arguments made by Defendants, such as that Wershe's "unclean hands" preclude equitable tolling. Without reaching the merits of Wershe's claims, we conclude that it was proper for the district court to dismiss Wershe's complaints.

## C. Dismissal with Prejudice

Wershe argues that even if his claims are time-barred, the district court erred by dismissing his complaints with prejudice and, therefore, without leave to amend. Rather, he claims the district court should have permitted him to amend his complaints to add allegations that Defendants directly threatened him with retaliation. Dismissal with prejudice is appropriate

---

one-year grace period to file claims after the minor turns eighteen years old. *See id.* § 600.5851(1). However, to the extent that any of Wershe's limitations periods expired while he was a minor, his one-year grace period has long passed because he turned eighteen years old in 1988. *See id.*

when "the complaint could not be saved by an amendment." *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.1 (6th Cir. 2021). We review the dismissal of a complaint with prejudice for an abuse of discretion but apply *de novo* review to the determination that an amendment would be futile. *See id.*

The district court did not err by dismissing Wershe's complaints with prejudice. Wershe never moved to amend his complaints for the purpose of curing his statute of limitations deficiencies before the district court. *Cf. Printup v. Dir., Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 791 (6th Cir. 2016) (affirming the dismissal with prejudice of a plaintiff's time-barred complaint where the plaintiff never moved to amend the complaint and an amendment would have been futile). Furthermore, Wershe does not point to any specific allegations he could add that would change the statute of limitations or equitable tolling inquiries. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (affirming dismissal with prejudice where a plaintiff "did not offer any meaningful indication of how it would plead differently"). In fact, Wershe does not contest that the applicable statutes of limitations have expired. His claims clearly fall far outside of the applicable statutes of limitations, and any amendments to cure the statute of limitations deficiencies would plainly be futile.

Similarly, Wershe does not identify any particular allegations that could save his equitable tolling arguments. Of course, it is always possible that a plaintiff may allege some new fact, unknown to this Court now, that makes equitable tolling more compelling. But no such facts are apparent in Wershe's case, given his decades-old claims and the lack of available evidence to litigate his suits.

Wershe argues that he was caught off guard by the district court's focus on whether Defendants issued any specific threats of retaliation. Accordingly, he claims that he should be permitted to add such allegations to his complaint. However, it was Wershe's complaints that introduced the idea that equitable tolling could be based on threats of retaliation. Even on appeal, Wershe does not make any new allegations that plausibly identify specific threats of retaliation by Defendants. He only generally remarks that he "could have obtained more affidavits and/or facts." No. 23-1902, Appellant's Br. at 59; No. 23-1903, Appellant's Br. at 58.

Because no amendments appear able to save Wershe's time-barred claims, dismissal with prejudice of Wershe's complaints was proper.

### D. Materials Outside the Pleadings

Lastly, Wershe challenges the district court's handling of materials outside the pleadings. If a district court considers materials outside the pleadings at the motion to dismiss stage, it must ordinarily convert the motion to dismiss into a motion for summary judgment. *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). However, the district court may consider exhibits attached to the complaint, exhibits attached to the motion to dismiss briefing, items in the record, or public records without converting the motion to dismiss when these items "are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). We review the district court's treatment of materials outside the pleadings for an abuse of discretion, *see Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010), which occurs when the district court "relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard," *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010).

Wershe first takes issue with the district court's failure to consider three affidavits attached to his complaints that allegedly established his fear of retaliation, as well as other evidence attached to his motion to dismiss briefing. However, while this Circuit's case law permits the district court to consider such evidence at the motion to dismiss stage if it is central to the plaintiff's claims, nothing requires the district court to do so. *See Bassett*, 528 F.3d at 430. In this case, the district court reasonably concluded that "many of the submitted exhibits"—both those submitted by Defendants and by Wershe—fell "well outside of the complaint's central claims." No. 4:21-cv-11686, Consol. Order, R. 73, Page ID #1418; No. 4:22-cv-12596, Consol. Order, R. 20, Page ID #213. It was not an abuse of discretion for the district court to do so. In any case, these affidavits do not allege any specific threats of retaliation, and seemingly do not change the equitable tolling analysis given the strength of the factors weighing against equitable tolling.

Wershe next argues that the district court improperly considered Defendants' evidence but refused to consider Wershe's evidence. Specifically, the district court took notice that Wershe had sued his parole board and the prison warden, and had also challenged his conviction. However, unlike the affidavits and other evidentiary materials that Wershe and Defendants incorporated by reference into the pleadings, here the district court simply took notice of other judicial proceedings. And it took notice of these lawsuits "not for the truth of the facts recited therein, but for the existence of the [suits]." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (citation omitted). It is "well-settled" that courts may do just that, *see Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999), including at the motion to dismiss stage, *see Winget*, 537 F.3d at 576; *see also* Fed. R. Evid. 201(d). The district court did not err in doing so.

## III. CONCLUSION

A number of Wershe's allegations, if true, are deeply troubling. That said, we cannot move forward with adjudicating Wershe's claims because his statutes of limitations have long expired. For the reasons set forth above, we **AFFIRM** the district court's dismissal of Wershe's complaints.